# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. JAMES C. NICHOLS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-A-73    Thomas H. Shriver, Judge**

---

**No. M1997-00260-SC-R11-CD - Decided June 30, 2000**

---

We granted this appeal to determine whether the jury instruction given pursuant to a previous version of Tenn. Code Ann. § 40-35-201(b) during the guilt phase of the trial of James C. Nichols, the defendant, violated his due process rights under the Fourteenth Amendment to the United States Constitution and under Article I, § 8 of the Tennessee Constitution.  We consider also whether the evidence is sufficient, as a matter of law, to support Nichols's conviction for first degree murder. We hold that the jury instruction given is constitutional.  Thus, Nichols's due process rights were not violated.  Additionally, we conclude that the evidence is sufficient to support Nichols's conviction for first degree murder.  The judgment of the Court of Criminal Appeals is, therefore, affirmed.

**Tenn. R. App. P. 11 Appeal by Permission from Appellate Court to Supreme Court; Judgment of Conviction of the Court of Criminal Appeals is Affirmed**

BIRCH, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, HOLDER, and BARKER, JJ., joined.

Jeffrey A. Devasher, Assistant Public Defender, Robert M. Robinson, Assistant Public Defender, Mary Griffin, Assistant Public Defender, for the appellant, James C. Nichols.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Elizabeth B. Marney, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, Nicholas D. Bailey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I

We granted this appeal to determine whether the jury instruction[1] given pursuant to a previous version of Tenn. Code Ann. § 40-35-201(b) during the guilt phase of the trial of James C. Nichols, the defendant, violated his due process rights under the Fourteenth Amendment to the United States Constitution and under Article I, § 8 of the Tennessee Constitution. We consider also whether the evidence is sufficient, as a matter of law, to support Nichols's conviction for first degree murder.

After a careful review of our own precedent, and an exhaustive reading of the entire record, we hold that the jury instruction given is constitutional. Thus, Nichols's due process rights were not violated. Additionally, we conclude that the evidence is sufficient to support Nichols's conviction for first degree murder. The judgment of the Court of Criminal Appeals is, therefore, affirmed.

II

The salient facts of record indicate that Nichols lived with Barbara Sue Oakley, albeit intermittently, for approximately eleven years prior to the incident herein involved. On September 24, 1994, during a confrontation, Nichols stabbed Oakley several times; she died six days later from the wounds inflicted.

Several witnesses testified about Nichols's excessive use of alcohol and his propensity to threaten to kill Oakley. Nichols was heard to have made several such threats on the day of the altercation. In summary, the relationship between Nichols and Oakley was, according to the testimony, quite stormy because of the threats and physical abuse by Nichols and the heavy consumption of alcoholic beverages by both parties.

Approximately one week before Oakley's death, her niece saw Nichols point a knife at Oakley and tell Oakley that he was going to kill her. Although Nichols had not been drinking prior to the above-described incident, he was upset because Oakley had recently informed him that she planned to move out of his residence to live with another man. On this occasion, as on others, Oakley ignored Nichols's threats and did not appear frightened.

During the (approximately) eight hours immediately preceding the stabbing, Nichols and Oakley had consumed two half-gallon jugs of *Wild Irish Rose* wine. According to Nichols, the two were seated at Nichols's kitchen table when they began to argue in the late afternoon of September 24, 1994. Nichols then rose from the table, went toward the kitchen sink, and retrieved a knife from the drain rack. He then stabbed Oakley three times--twice in her abdomen and once in her upper left chest. Each stab wound was potentially life threatening. Oakley fled the kitchen and managed to reach a neighbor's house. Oakley was taken to Vanderbilt Hospital, where she died six days later. Two freshly washed knives were later discovered behind the kitchen sink.

---

[1]"When a charge as to possible penalties has been requested . . . the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment . . . ." Tenn. Code Ann. § 40-35-201(b)(2)(A)(i)(Supp. 1994); see also Section III infra.

At the close of evidence, the trial court instructed the jury as to the range of punishment for the charged and lesser included offenses pursuant to the applicable statutory provisions.[2] Additionally, the trial court instructed the jury as follows:

> The jury will not attempt to fix any sentence. However, you may weigh and consider the meaning of a sentence of imprisonment.

> You are further informed that the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest release eligibility date is 25 years.

> Whether a defendant is actually released from incarceration on the date when first eligible for release is a discretionary decision made by the Board of Paroles and is based on many factors. The Board of Paroles has the authority to require a defendant to serve the entire sentence imposed by the Court.

After considering the evidence and the trial court's jury instructions, the jury convicted the defendant of first degree murder. The trial court then imposed a sentence of life imprisonment. The Court of Criminal Appeals affirmed Nichols's conviction and sentence. On appeal, Nichols insists that his due process rights were violated when the trial court instructed the jury that it could weigh and consider the meaning of a sentence of imprisonment and then informed the jury of the minimum years that Nichols would have to serve before reaching his parole eligibility date. Nichols also contends that there is insufficient evidence to sustain his conviction of first degree murder.

III

A.  Jury Instruction Pursuant to Tenn. Code Ann. § 40-35-201(b)

We first address Nichols's contention that his due process rights were violated when the trial judge instructed the jury to weigh and consider the meaning of a sentence of imprisonment pursuant

---

[2]Tenn. Code Ann. § 40-35-201(b)(1) (1994 Supp.); see also Section III infra.

to a previous version of Tenn. Code Ann. § 40-35-201(b).[3]  This issue is resolved by our decision in State v. King.  973 S.W.2d 586 (Tenn. 1998).

In King, the defendant contended that the previous version of Tenn. Code Ann. § 40-35-201(b) violated his due process right to a fair trial because the statute permitted the trial judge to inform the jury as to the defendant's parole eligibility date; information which, the defendant contended, was irrelevant to the jury's determination of guilt or innocence.  Id. at 591-92.  We held that Tenn. Code Ann. § 40-35-201(b) violated neither the Due Process of Clause of the United States Constitution nor the Tennessee Constitution.  Id. at 592.  In determining that the statute was constitutional, we reasoned that such information "does have a measure of relevance" and that "the legislature has determined for us the relevancy of sentencing and parole information."  Id. at 591.  We also noted that:

> The people of this State, through the members of the General Assembly, have indicated a desire for truth in the sentencing process. Tennessee Code Annotated § 40-35-201(b)(2) is a reflection of that desire.  As a matter of policy, the legislature has decided that the sentencing information is relevant because jurors are better off having concrete information on these issues rather than being left to speculate on their own.  The rationale for permitting an instruction on the range of punishment, even though the jury does not impose the sentence, is that in reality, "jurors will consider punishment anyway and without direction may speculate to the possible detriment of a defendant.  If nothing else, the instruction impresses upon the jurors

---

[3]This version of Tenn. Code Ann. § 40-35-201(b) provided that:

> (b)(1)  In all contested criminal cases . . . upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses.

> (b)(2)(A)(i)  When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment . . . .

Tenn. Code Ann. § 40-35-201(b) (Supp. 1994)(emphasis added).  In 1998, this statute was repealed; Tennessee juries are no longer allowed to consider sentencing options at the same time they decide a defendant's innocence or guilt.  Compare Tenn. Code Ann. § 40-35-201(b) (Supp. 1994) with Tenn. Code Ann. § 40-35-201(b) (Supp. 1998)("In all contested criminal cases . . . the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses.").

the consequences of a guilty verdict." . . . While some may prefer a "pure" system where juries are wholly unaffected by considerations other than those strictly relevant to guilt or innocence, the reality is that jurors bring their experience and knowledge into the courtroom with them. We do not quarrel with those who feel it is better for them to be accurately informed rather than left to speculate. . . . [A]n instruction under Tenn. Code Ann. § 40-35-201(b) does not permit a jury to impose a sentence based on how much time they speculate that a defendant will actually serve.

Id. at 591-92 (internal citations omitted). Under King, therefore, we hold that Nichols's due process rights were not violated when the trial judge instructed the jury pursuant to Tenn. Code Ann. § 40-35-201(b).

Nichols contends, however, that this case is distinguishable from King because in King the trial court instructed the jury that the defendant's parole eligibility date was provided for the jurors's information, as opposed to the "weigh and consider" language used in the trial court's instruction in this case. We find Nichols's contention without merit. As noted above, we held in King that an instruction containing sentencing information given pursuant to Tenn. Code Ann. § 40-35-201(b) was relevant and thus constitutional. A slight difference in the language of the instruction does not constitute a due process violation. Moreover, we find no significant distinction between the language "for your information" and "weigh and consider." Finally, the Court of Criminal Appeals, when presented with this exact question, relied on our decision in King and held that Tenn. Code Ann. § 40-35-201(b) was constitutional despite the trial judge's instruction that the jury could "weigh and consider" the meaning of a sentence of imprisonment. State v. Green, 995 S.W.2d 591 (Tenn. Crim. App. 1998), perm. appeal denied April 12, 1999.

B. Sufficiency of the Evidence

We next turn to Nichols's contention that there is insufficient evidence to support a conviction for first degree murder. When an accused challenges the sufficiency of the convicting evidence, the standard of review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979)(emphasis in original) (citation omitted); see also State v. Burns, 979 S.W.2d 276, 286-87 (Tenn. 1998); Tenn. R. App. P. 13(e). Additionally, we note that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Moreover, a verdict of guilt at the trial court removes the presumption of innocence and replaces it with a presumption of guilt. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

At the time of the crime, first degree murder was defined as "[a]n intentional, premeditated and deliberate killing of another . . . ." Tenn. Code Ann. § 39-13-202(a)(1) (1991).[4]  In analyzing whether the State presented sufficient proof of deliberation and premeditation to support Nichols's first degree murder conviction, we are guided by the statutory definitions in effect at the time the events underlying this case occurred:

> (1) "Deliberate act" means one performed with a cool purpose; and
> (2) "Premeditated act" means one done after the exercise of reflection and judgment.  Premeditation may include instances of homicide committed by poison or by lying in wait.

Tenn. Code Ann. § 39-13-201 (1991).

Additionally, the Sentencing Commission Comments to the above-quoted statute provide that:

> The definition of "a premeditated act" . . . permits that "premeditation may be formed in an instant." (Citation omitted).  The definition of "a deliberate act" is that the act be one committed with "a cool purpose" and without passion or provocation.  This latter phrase is designed to allow the defendant who kills another with passion or provocation to be adjudged guilty of either second degree murder or voluntary manslaughter, as defined in those sections.

Tenn. Code Ann. § 39-13-201 (1991), Sentencing Comm'n Cmts. (emphasis added).  Thus, deliberation and premeditation are similar, but distinct, elements of the offense of first degree murder.  See id.; see also State v. Brooks, 880 S.W.2d 390, 392-93 (Tenn. Crim. App. 1993).

In a case previously decided by this Court, we have distinguished the element of premeditation from the element of deliberation by emphasizing that although the element of premeditation is capable of instantaneous formation, deliberation requires "some period of reflection, during which the mind is 'free from the influence of excitement, or passion.'" State v. Brown, 836 S.W.2d 530, 540 (Tenn. 1992) (emphasis added)(citation omitted).  In Brown the element of deliberation was defined as:

> "deliberation" is the process of carefully weighing such matters as the wisdom of going ahead with the proposed killing, the manner in which the killing will be accomplished, and the consequences which may be visited upon the killer if and when apprehended.

---

[4]In 1995, this statute was amended to reflect its current version; first degree murder is now defined as "[a] premeditated and intentional killing of another . . . ." Tenn. Code Ann. § 39-13-202(a)(1) (1995).

> "Deliberation" is present if the thinking, i.e. the "premeditation," is being done in such a cool mental state, under such circumstances, and for such a period of time as to permit a 'careful weighing' of the proposed decision.

Id. at 541 (citation omitted).

The elements of premeditation and deliberation are questions for the jury that may be established by proof of the circumstances surrounding the killing. See State v. Pike, 978 S.W.2d 904, 915 (Tenn. 1998); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). There are several factors that tend to support the existence of these elements, which include: declarations by the defendant of an intent to kill, evidence of procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, infliction of multiple wounds, preparation before the killing for concealment of the crime, destruction or secretion of evidence of the murder, and calmness immediately after the killing. See Pike, 978 S.W.2d at 914; Bland, 958 S.W.2d at 660; Brown, 836 S.W.2d at 541-42.

Viewing the evidence and inferences therefrom in a light most favorable to the State, this Court finds sufficient evidence to support the jury's finding of both premeditation and deliberation. The evidence showed that Nichols and Oakley had a violent and physically abusive relationship. Nichols threatened Oakley with death on prior occasions and, on at least one of those occasions, had pointed a knife at her. In committing the murder, Nichols rose from the table at which the couple were arguing, went toward the kitchen sink, selected a knife from the drain rack, and stabbed Oakley three times, each time inflicting a life threatening injury.[5] Afterward, Nichols apparently washed the victim's blood from the knife.

Each of these factors is relevant to either premeditation, deliberation, or both. See Pike, 978 S.W.2d at 914-15; Bland, 958 S.W.2d at 660. Thus, the evidence before the jury, while not overwhelming, was sufficient to support findings of both premeditation and deliberation.

IV

For the reasons articulated above, we hold that Nichols's due process rights were not violated by the jury instruction given pursuant to a previous version of Tenn. Code Ann. § 40-35-210(b) during the guilt phase of his trial. Additionally, we hold that there was sufficient evidence to support his conviction for first degree murder. The Court of Criminal Appeals is, therefore, affirmed.

Costs of this appeal are assessed to Nichols.

---

[5]The Court of Criminal Appeals concluded that Nichols had retrieved the knife from a kitchen drawer. Such a conclusion could be drawn from the record and such an act, if true, would be sufficient to satisfy the elements of premeditation and deliberation.