IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2001 Session

## STATE OF TENNESSEE v. KENNETH LAMONT ANTHONY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-C-1985     Seth Norman, Judge**

---

**No. M2000-00839-CCA-R3-CD  - Filed April 27, 2001**

---

The Defendant, Kenneth Anthony, was convicted by a Davidson County jury of first degree pre-meditated murder and attempted second degree murder.  For these offenses, the Defendant received a sentence of imprisonment for life and a concurrent sentence of ten years in the Tennessee Department of Correction, respectively.  On appeal, the Defendant challenges the sufficiency of the evidence with regard to the first degree premeditated murder conviction.  Finding sufficient evidence in the record to support the Defendant's convictions, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Richard McGee, Nashville, Tennessee, for the Appellant, Kenneth Anthony.

Paul G. Summers, Attorney General and Reporter, Glen C. Watson, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, and Pamela S. Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

The evidence presented to the jury at trial, when viewed in a light most favorable to the prosecution, can be summarized as follows:  At about 1:30 a.m. on May 17, 1998, Tony Moore and Teresa Day were walking together on the sidewalk on South Seventh Street in Nashville, Tennessee.  The Defendant was walking on the same sidewalk but in the opposite direction.  According to one witness who was sitting on a porch step within a few feet of the shooting, when the Defendant met Moore and Day, he said, "I heard you was looking for me," and began shooting at Moore and Day.

At least six shots[1] were fired in rapid succession. Moore was shot once in the chest and died about two days later. He was not physically able to give a statement to the police prior to his death. Day was shot in both knees and feet. She later identified the Defendant as the shooter. The witness who heard the Defendant's statement immediately prior to the shooting was also able to identify the Defendant as the shooter. No weapons were found in the possession of either victim.

## II. Analysis

In this appeal, the Defendant's sole issue concerns the sufficiency of the evidence pertaining to premeditation by the Defendant, which is an element of the offense for which he was convicted. The Defendant argues that the record contains insufficient evidence for any rational trier of fact to have found beyond a reasonable doubt the essential element of premeditation by the Defendant in the shooting death of Tony Moore. Following our careful review of the record, we respectfully disagree.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

First degree murder is defined, in part, as "the premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). "Premeditation" is described as "an act done after the exercise of reflection and judgment." Id. § 39-13-202(d). To find a defendant guilty of

---

[1]The police recovered five .25 caliber shell casings at the scene, and one additional shell casing was later recovered from inside Moore's bloody shirt.

premeditated murder, the jury must determine that "the intent to kill was formed prior to the act itself" and that "the accused was sufficiently free from excitement and passion as to be capable of premeditation." Id. "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302(a).

Because premeditation entails proof of a state of mind about which there may be no direct evidence, "cases have long recognized that the necessary elements of first-degree murder may be shown by circumstantial evidence." State v. Brown, 836 S.W.2d 530, 541 (Tenn. 1992). Premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). And, the jury may infer premeditation from the manner and circumstances of the killing. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our supreme court has enumerated several factors that may support the existence of premeditation and deliberation, including: (1) declarations by the defendant of an intent to kill, (2) evidence of procurement of a weapon, (3) the use of a deadly weapon upon an unarmed victim, (4) the particular cruelty of the killing, (5) infliction of multiple wounds, (6) preparation before the killing for concealment of the crime, (7) destruction or secretion of evidence of the murder, and (8) calmness immediately after the killing. State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000).

The jury in this case was correctly instructed as follows concerning the definition of premeditation:

> A "premeditated" act is one done after the exercise of reflection and judgment. Premeditation means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time he allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation. If the design to kill was formed with premeditation, it is immaterial that the accused may have been in a state of passion or excitement when the design was carried into effect. Furthermore, premeditation can be found if the decision to kill is first formed during the heat of passion, but the accused commits the act after the passion has subsided.

See Tenn. Code Ann. § 39-13-202(d); T.P.I. - Crim. 7.01(b).

In his brief, the Defendant points out certain aspects of the testimony of several witnesses to support his argument that the evidence of premeditation is insufficient. First, he notes that one of the eyewitnesses to the shooting, Shanika Beard, did not hear the Defendant or either of the victims make any statements prior to the shooting. Secondly, the Defendant points out that the eyewitness who testified that she heard the Defendant say, "I heard you was looking for me," was not sure of how much time passed between the statement and the first shot; the witness was also not sure who fired the first shot. Third, the Defendant asserts that because both eyewitnesses who testified "took

cover" immediately upon hearing the initial shots, neither could state whether either victim was armed or whether (if armed) he or she may have fired the first shots they heard. Finally, the Defendant claims that inflammatory remarks by Detective Kyle Anderson caused the jury to convict the Defendant of premeditated murder in the absence of sufficient evidence of premeditation. The pertinent portion of Detective Anderson's testimony is as follows:

> DEFENSE COUNSEL: Why would it be a problem for her to talk with you on the front porch?
> DETECTIVE ANDERSON: . . . I am actually surprised that you would ask that. But, obviously, people who live in a high-crime neighborhood, in which not everybody sees the police as their friend, are, of course, scared of retribution from people like your client, for helping having him arrested. Citizens are not always rewarded.
> DEFENSE COUNSEL: So you would characterize this place as a high-crime area?
> DETECTIVE ANDERSON: Yes.
> DEFENSE COUNSEL: Dangerous, in other words?
> DETECTIVE ANDERSON: Well, because people like your clients are killing people there, yes.

In this case, the jury heard evidence from which they could reasonably and rationally infer that the Defendant acted with premeditation. The Defendant used a deadly weapon. He fired the weapon several times at point-blank range at the two victims. The victims were apparently unarmed. The Defendant apparently approached the victims in a calm manner on the sidewalk, and when he was close to them he stated, "I heard you was looking for me," and opened fire. After the shooting, the Defendant left the scene. It is both rational and reasonable that the jury concluded from the evidence that the Defendant shot Tony Moore intentionally and with premeditation. As the State points out in its brief, the existence of the element of premeditation is a question for the jury that may be established by proof of the circumstances surrounding the killing. Bland, 958 S.W.2d at 660.

Considering the entire record in this case, we cannot conclude that Detective Anderson's comments pertaining to the high crime area where the killing occurred and the issue of retribution affected the jury's verdict. Detective Anderson was answering the questions of defense counsel when he made the allegedly "inflammatory" remarks about people in the neighborhood fearing retribution from people "like your client" and that the place of the killing was a high crime area because "people like your clients are killing people there, yes." Although we agree with counsel for the Defendant that these comments by Detective Anderson were not necessary to fully answer the questions asked of him, we cannot conclude that these comments affected the verdict of the jury. As stated above, there is ample evidence in the record from which a jury could find that the Defendant killed Tony Moore intentionally and with premeditation.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE