# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 11, 2003 Session

## STATE OF TENNESSEE v. LOUIS G. TURNER

### Direct Appeal from the Criminal Court for Davidson County
### No. 2000-D-2235     Seth Norman, Judge

---

### No. M2002-01000-CCA-R3-CD - Filed March 7, 2003

---

The defendant challenges the sufficiency of the evidence after being convicted by a Davidson County jury of premeditated first degree murder and sentenced to life imprisonment. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Cynthia M. Fort (on appeal) and G. Wayne Davis (at trial), Nashville, Tennessee, for the appellant, Louis G. Turner.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jason W. Lawless and Lisa Naylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

It is undisputed that on September 4, 2000, the defendant killed the victim, Troy Bender, after shooting him ten times with a pistol. The defendant knew the victim prior to the homicide. They had several confrontations prior to this date and were not on friendly terms.

The state's proof indicated that Jenika Woodruff, her brother, and Clifford Jackson were at the Texaco station on Gallatin Pike in Davidson County at approximately 6:00 p.m. on September 4th. They were awaiting the arrival of Woodruff's boyfriend, Jason Wilson. The defendant, who knew Woodruff and Jackson, arrived at the station in a vehicle along with his passenger, Troy Stanton. Jackson then got into the defendant's vehicle.

Thomeka Howard, victim Troy Bender's girlfriend, was driving her black Camaro in which Bender was a passenger. The black Camaro was similar to a black Camaro customarily driven by

Jason Wilson. Howard parked her vehicle in front of the Texaco station and entered the station to purchase bread. Upon her returning to the vehicle, Bender, still in the passenger seat, requested that she go back into the station and purchase cigarettes. Howard testified that while she was bending down on the driver's side getting money from Bender, she heard numerous shots. Bender, who never got out of the passenger seat, was struck by ten bullets in the back and side and died as the result of his wounds. Bender did not have a weapon. Subsequently, two one dollar bills were found by an officer in the floorboard of the vehicle.

Woodruff testified that just prior to the shooting, she observed the defendant "creep" around the back of Howard's vehicle "in a slow walk" and approach the passenger side. Woodruff, Texaco customer Jaquelyn Mullin, and defendant's passenger Troy Stanton testified the defendant then pulled his shirt up over his face prior to firing numerous shots into the vehicle. These shots shattered the glass of the passenger window. The witnesses stated the defendant then ran to his own vehicle, which at that time was being driven by Clifford Jackson. The vehicle fled the scene.

According to the testimony of Troy Stanton, the defendant and Stanton were to purchase marijuana from Clifford Jackson at the Texaco station. Stanton said that when Howard's vehicle pulled onto the lot, the defendant told Stanton, "there go dude right there." The defendant then instructed Stanton to get into the back seat; the defendant secured a pistol from the front seat; and Jackson sat in the driver's seat. The defendant then proceeded to Howard's vehicle and fired numerous shots. Upon returning to his vehicle, the defendant told Stanton he gave the victim a "dome shot," meaning a shot to the head. When Stanton asked the defendant why he shot Bender, the defendant stated Bender had previously tried to rob him. The defendant made a similar statement to Woodruff when she saw him later that evening.

The defendant testified, contrary to Stanton's testimony, he and Stanton were to meet Jason Wilson at the Texaco station to buy marijuana. The defendant testified that when he observed the black Camaro at the Texaco station, he mistakenly thought it was the black Camaro driven by Wilson. He stated he tapped on the window, was startled to see Bender, thought Bender had a weapon in his hand, and, therefore, shot Bender in self-defense. The defendant stated he threw the pistol out of the car after leaving the Texaco station.

The defendant denied securing the pistol from his front seat and stated he always carried the pistol in his waistband. He testified he feared Bender because of a prior robbery attempt approximately one year earlier in which Bender pistol-whipped the defendant. The defendant further testified that he had other confrontations with Bender and Bender had previously assaulted the defendant's grandfather. Other defense witnesses testified as to prior violent incidents in which Bender assaulted and/or threatened the defendant as well as his grandfather.

The jury rejected the defendant's claim of self-defense and convicted the defendant of premeditated first degree murder.

## STANDARD OF REVIEW

The defendant contends the evidence was insufficient to support his conviction for premeditated first degree murder. Specifically, he contends the evidence was insufficient to establish the element of premeditation. The state, on the other hand, contends the jury properly found premeditation. We agree with the state.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

## ANALYSIS

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our supreme court delineated several circumstances that may be indicative of premeditation, including declarations of the intent to kill, procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, the making of preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence, and calmness immediately after the killing. State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000).

We must view the evidence in the light most favorable to the state. The defendant harbored animosity toward Bender as the result of prior confrontations. Upon observing Howard's car in which Bender was a passenger, the defendant immediately secured a weapon, arranged for Jackson to drive the defendant's vehicle, crept up to Howard's car, pulled his shirt over his face, and shot the victim ten times in the back and side while the victim was turned away from him attempting to hand money to Howard. The victim was unarmed and, viewing the evidence in the light most favorable to the state, never saw the defendant prior to the defendant's shooting him. The defendant fled and later discarded the pistol. It was the jury's prerogative to reject the defendant's claim of self-defense. *See* State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim App. 1997). Furthermore, the

degree of homicide is generally a question for the jury's determination. <u>State v. Shelton</u>, 854 S.W.2d 116, 119 (Tenn. Crim. App. 1992). There was ample evidence to support the conviction for premeditated first degree murder.

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE