IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 16, 2008

## STATE OF TENNESSEE v. TYCORRIAN CHANDLER

**Direct Appeal from the Criminal Court for Knox County**
**No. 86183     Richard R. Baumgartner, Judge**

———————————

**No. E2008-00830-CCA-R3-CD - Filed December 4, 2009**

———————————

Following a jury trial, Defendant, Tycorrian Chandler, was found guilty of first degree premeditated murder and sentenced to life with the possibility of parole. On appeal, Defendant argues that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Russell T. Greene, Knoxville, Tennessee, for the appellant, Tycorrian Chandler.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Background

Maurice Davis testified that he played football with Defendant for four years at Austin-East High School and also was a classmate of the victim, Desean Garner. Mr. Davis said that he and Chris Winton were riding around in a Saab vehicle driven by Mr. Davis at approximately 9:30 p.m. on May 30, 2006. Mr. Davis saw the victim at the intersection of Linden Avenue and Spruce Street, and Mr. Davis stopped his vehicle in the middle of the road. Mr. Davis and the victim chatted for a few minutes. Defendant walked up, said something to the victim, and he and the victim began arguing. Mr. Davis said that Defendant was pacing back and forth during the exchange with the victim.

Mr. Davis said that he did not pay attention to the argument until "[i]t turned gang-related." Mr. Davis heard Defendant say, "East side blood. East side blood. Crip killer. Crip killer." The victim responded, "Kill a Crip. Kill a Crip." Defendant told the victim that he was going "to pull it out and use it," and the victim responded, "Shoot me, n___. Shoot me." The victim "threw his hands up and turned." Defendant fired his gun at the victim approximately four times. Mr. Davis said that Defendant walked across the street and then started running.

On cross-examination, Mr. Davis said that Lennesha Blair, whom Mr. Davis knew as "Tater," was standing on the other side of Linden Avenue, and Mr. Davis was talking with Ms. Blair while the victim and Defendant were arguing. Mr. Davis reiterated that he did not pay attention to the argument between Defendant and the victim until he heard the gang-related terms. Mr. Davis said that he did not know what type of weapon was fired, but he acknowledged that he told the investigating officers that he believed Defendant was armed with a revolver.

Mr. Davis stated that the victim had the phrase "In Linden Ave [sic], I trust" tattooed on his right arm. Mr. Davis acknowledged that he also had an "LA" tattoo, and said that all of the men he "hung with" had similar tattoos, including Mr. Winton. Mr. Davis denied that the victim was trying to start a gang on Linden Avenue. Mr. Davis explained, "It's just something we had on our own because we all hung together." Mr. Davis said that the victim never told Mr. Davis that the victim belonged to the Crip gang. Mr. Davis said that the victim and Defendant were frequently together, which would not have been possible had the two men been in separate gangs. Mr. Davis said that he did not believe that the victim was armed when he was shot and stated that there were no guns in his vehicle.

Lennesha Blair testified that she had known Defendant for approximately two years and had been friends with the victim, Mr. Davis, and Mr. Winton for a number of years. Ms. Blair said that she saw Defendant before the shooting on May 30, 2006, as she and a girlfriend were walking down Linden Avenue. Ms. Blair said that Defendant was angry "about some money." Ms. Blair hugged Defendant and felt a gun on his right hip. Ms. Blair said that she saw Defendant later that evening on Linden Avenue while she was talking to Mr. Davis. Ms. Blair stated that the Defendant and the victim were arguing and that Defendant was pacing back and forth. Ms. Blair said that Defendant stopped pacing, pulled out a gun, and shot the victim. Ms. Blair called the police and then went over to the victim who was unconscious. At the trial, Ms. Blair identified Defendant as the shooter.

On cross-examination, Ms. Blair said that the victim was facing Defendant with his arm held up when Defendant discharged his weapon. Ms. Blair said that she had never seen anyone with a tattoo with the words, "Linden Avenue." Ms. Blair stated that she called the 911 operator after the shooting and identified Defendant as the perpetrator.

Stephen Wade Burchfield, with the Knoxville Police Department, testified that he received a call from the dispatcher at approximately 9:45 p.m. on May 30, 2006, concerning a shooting at the intersection of Linden Avenue and Spruce Street. Officer Burchfield said that Ms. Blair approached him at the crime scene and identified Defendant as the shooter. Ms. Blair told Officer Burchfield

that Defendant had left the crime scene in a gold Crown Victoria.  On cross-examination, Officer Burchfield said that he was not aware of an organization called the Linden Avenue Group.

Christopher Winton testified that he was riding in Mr. Davis's vehicle on Linden Avenue on the evening of May 30, 2006.  Mr. Winton said that Mr. Davis pulled over, and Mr. Winton began talking to Defendant and the victim.  Mr. Winton stated that Defendant and the victim started arguing, and Defendant said that he "was going to shoot up the block" because people were "playing him."  Mr. Winton said that Defendant paced back and forth during the argument, then he stopped and fired his gun approximately five times at the victim.  Mr. Winton stated that after he fired his weapon, Defendant made "signs, gang-related" and walked off.  Mr. Winton interpreted Defendant's hand signs as, "East side Blood.  Crip killer."  Mr. Winton stated that the victim was not carrying a gun.  Mr. Winton identified Defendant as the shooter at trial.

On cross-examination, Mr. Winton acknowledged that he had a tattoo on his arm with the letters "LA" and that the victim and Mr. Davis had similar tattoos.  Mr. Winton said that he got the tattoo because he lived on the street.  Mr. Winton insisted that the tattoo did not signify a gang affiliation.  Mr. Winton said that Defendant's weapon was an automatic weapon.

Investigator William S. Still, with the Knoxville Police Department's violent crimes unit, testified that he arrived at the crime scene on Linden Avenue at approximately 10:05 p.m. after the victim had been transported to the hospital.  Investigator Still said that six 9mm shell casings were found at the scene, all bearing the brand name "CCI."  He interviewed three juvenile witnesses at the scene who identified Defendant as the shooter.  Investigator Still said that Defendant turned himself into the police station at approximately 9:00 p.m. on May 31, 2006.  Defendant was read his Miranda rights and executed a written waiver.  Defendant told Investigator Still that he did not shoot the victim and that he was not present when the shooting occurred.  The interview lasted approximately fourteen minutes.  A tape recording of Defendant's statement was played for the jury.  Investigator Still said that Ms. Blair and Mr. Davis subsequently identified Defendant as the shooter from a photographic lineup.

Officer Edward Johnson, a crime scene investigator with the Knoxville Police Department, photographed the crime scene on Linden Avenue.  Officer Johnson testified that six 9mm Luger shell casings were found at the scene, each labeled with the brand name, "CCI."

Dr. Darinka Mileusnic-Polchan, the assistant chief medical examiner for Knox County, performed an autopsy on the victim on May 31, 2006.  Dr. Mileusnic-Polchan testified that the victim was shot once in the upper chest region.  The bullet perforated both lungs and fractured his spine.  The victim received two other gunshot wounds in the left elbow and upper left thigh.  None of the wounds showed evidence that the shots had been fired at a close range.  Dr. Mileusnic-Polchan stated that the victim's wounds were consistent with the victim raising his arm and turning away from the shooter as the shots were fired.

## II. Sufficiency of the Evidence

On appeal, Defendant challenges the sufficiency of the convicting evidence. Specifically, Defendant argues that the only evidence of premeditation was Defendant's gang-related statement prior to the shooting, and Defendant submits that there was not sufficient evidence to place the statement in context. Defendant also argues that the evidence was insufficient to support a finding of premeditation based on the inconsistencies in the witnesses' testimony as to how the shooting occurred, and the lack of evidence as to how and why the altercation between Defendant and the victim began.

In reviewing Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First degree murder is "[a] premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). As used in subdivision (a)(1),

> 'Premeditation' is an act done after the exercise of reflection and judgment. 'Premeditation' means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d)

The element of premeditation is a question of fact to be determined by the jury. State v. Davidson, 121 S.W.3d 600, 614 (Tenn. 2003). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our

-4-

supreme court has delineated several circumstances that may be indicative of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000).

Viewing the evidence in a light most favorable to the State, Ms. Blair testified that she saw Defendant before the shooting, that Defendant was angry, and that he was armed. Although there were some inconsistencies in the testimony concerning the type of weapon used and whether the victim was facing Defendant when he was shot or had turned away, Ms. Blair, Mr. Davis, and Mr. Winton identified Defendant as the shooter. All three witnesses testified that Defendant argued with the victim and paced back and forth during the altercation, which can be reasonably inferred to indicate a period of reflection. The State's witnesses testified that Defendant stopped pacing, pulled out a weapon and repeatedly shot the unarmed victim. There was also testimony that Defendant made gang-related statements or signs of "East Side Blood" and "Crip killer," suggesting a motive for the shooting and from which a reasonable juror could infer that Defendant was a killer. After the shooting, Defendant walked across the street and left the scene of the shooting. After review, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant acted with premeditation and was thus guilty of first degree premeditated murder. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE