IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2021

**STATE OF TENNESSEE v. DESTINY HALL**

**Appeal from the Circuit Court for Henderson County**
**No. 19-243-3 Kyle C. Atkins, Judge**
_____

**No. W2020-01706-CCA-R3-CD**
_____

The Defendant, Destiny Hall, was convicted at trial of evading arrest through the use of a motor vehicle, and she received a one-year sentence, suspended to probation supervised by community corrections after service of thirty days in confinement. On appeal, the Defendant argues that the evidence was insufficient to support her conviction. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jeremy Epperson, District Public Defender; and Hayley F. Johnson, Assistant Public Defender, Jackson, Tennessee, for the appellant, Destiny Hall.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Chadwick R. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant was charged with evading arrest through the use of a motor vehicle creating a risk of death or serious bodily injury and reckless endangerment after she, accompanied by her boyfriend, Mr. Deanthony Hart, fled her neighborhood in her vehicle and led law enforcement on a short chase. Henderson County Sheriff's Department ("HCSD") Sergeant Bradley Greer testified that on May 15, 2019, at around 5:30 a.m., he

responded to a domestic disturbance call at the Gore Park Trailer Park looking for a suspect who was later identified at trial as Mr. Hart. Sergeant Greer encountered Mr. Hart when he arrived, but he did not immediately recognize Mr. Hart as the suspect. Mr. Hart lied about his identity and directed Sergeant Greer to an area where he claimed the suspect was supposed to be, and when Sergeant Greer started walking in that direction, Mr. Hart ran in the opposite direction and entered the passenger seat of the Defendant's vehicle. Sergeant Greer ran toward the main road that led into the trailer park to try to stop the vehicle before it left. He stood in the road and put his hand up as a signal to stop, issued a verbal command for the Defendant to stop the vehicle, and pointed his weapon at the vehicle when the vehicle did not stop. The Defendant continued driving toward him and came within three feet of striking him, so he jumped out of the way. Sergeant Greer testified that he was in fear from almost being struck by the Defendant's vehicle. The vehicle exited the trailer park, and Sergeant Greer entered his police cruiser and pursued the Defendant's vehicle.

According to Sergeant Greer, he chased the vehicle with his lights and siren on along several "curvy back roads" in a residential area. The vehicle turned twice during the chase. He observed two individuals in the vehicle and did not see the occupants switch seats at any time. At one point during the pursuit, the Defendant pulled the vehicle over into an oncoming lane of traffic. Mr. Hart exited the passenger side of the vehicle and ran behind a house. Sergeant Greer ordered the Defendant, who had been driving the vehicle, to remain inside the vehicle, and he chased after Mr. Hart.

On cross-examination, Sergeant Greer testified that he was wearing a black uniform on the day of the pursuit and was the only law enforcement officer in the trailer park at that time. He disagreed that he ran toward the Defendant's vehicle, and he explained that he ran into the road while the vehicle was moving toward him. Sergeant Greer estimated that a minute to a minute and a half passed between when he activated his cruiser's lights and when the Defendant pulled over. Sergeant Greer's pursuit of Mr. Hart led him to run in front of the Defendant's vehicle, where he observed the Defendant in the driver seat and ordered her to stay in the vehicle. He testified that his police cruiser did not have a dash-mounted camera inside it. He agreed that his department's policy required that his body-worn camera be activated at all times and he agreed that he did not have any video from his encounters with the Defendant or Mr. Hart. On redirect examination, Sergeant Greer clarified that he did not record with his body-worn camera because its battery level was low.

Sergeant John James, formerly with the HCSD, testified that on May 15, 2019, at approximately 5:30 a.m., he responded to a domestic disturbance call as backup for Sergeant Greer. He arrived on scene after the Defendant's vehicle had stopped in

response to Sergeant Greer's pursuit, and he observed the Defendant inside the driver's seat talking on her cell phone with the vehicle running.

The Defendant testified that she lived at the trailer park and that on the night of May 15, 2019, her boyfriend, Mr. Hart, stayed with her at her residence. Ms. Kaitlin Caffrey, who was pregnant with Mr. Hart's child at the time, pulled up to the Defendant's residence, and Mr. Hart entered the vehicle with her. When Mr. Hart returned to the Defendant's residence, he grabbed a duffle bag containing his clothes and told the Defendant that he was going to a friend's house. Mr. Hart left the Defendant's residence and began walking away. The Defendant said she entered her vehicle and left her residence to make sure Mr. Hart was not meeting with Ms. Caffrey. While driving, she encountered Mr. Hart, so she stopped the vehicle to talk to him. According to the Defendant, Mr. Hart put his duffle bag in the back of the vehicle on the driver's side and then entered the vehicle on the passenger side. She stated that she asked him "what was going on" because she wanted to talk to him before taking him to his friend's house. She explained that as she was exiting her vehicle she looked over to say something to Mr. Hart and observed "a man in black with a gun pointed at [her]." She stated, "[Mr. Hart] said go, so I – Naturally I was scared, there was a gun in my face, so I went." She said that at some point while she was driving away, she noticed that blue lights were behind her vehicle. She turned right onto a road and turned left onto another road, and Mr. Hart directed the steering wheel over in front of a house. She stopped the vehicle and put it in park, and Mr. Hart exited the vehicle and ran, leaving the passenger side door open. She stated that she did not know that the police were looking for Mr. Hart.

On cross-examination, the Defendant testified that Sergeant Greer was not in front of her vehicle when she was leaving the trailer park. She explained that Sergeant Greer was approximately two trailers back running toward her vehicle and was not near her vehicle, and she maintained that Sergeant Greer was untruthful when he testified otherwise. The transcript reflects that the Defendant made gestures to demonstrate her testimony, but the substance of the gestures is not clear from the record. She agreed that she saw the blue lights and heard a siren behind her vehicle before making two turns. She testified that she did not stop immediately because she was afraid from having a gun pointed at her and did not know what was happening. She also maintained that she was afraid of Mr. Hart and that he was yelling at her. She stated that at a point during the incident "it all registered in [her] head that was an officer" and that she had to stop the vehicle. She disagreed that she ignored the blue lights and sirens. She stated that she did not speed and did not drive recklessly. When asked if she recognized other features of Sergeant Greer's uniform on the day of the incident, she responded that she had an astigmatism in both eyes.

- 3 -

The jury found the Defendant guilty of evading arrest through the use of a motor vehicle, a Class E felony, as a lesser included offense of evading arrest through the use of a motor vehicle creating a risk of death or serious bodily injury, a Class D felony. T.C.A. § 39-16-603(b)(1), (3) (2018). The trial court sentenced the Defendant to one year, suspended to probation supervised by community corrections after service of thirty days in confinement. This appeal followed.

## ANALYSIS

The Defendant did not file a motion for new trial. Failure to file a timely motion for new trial waives all issues "except for sufficiency of evidence and sentencing." *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004). The Defendant filed a timely notice of appeal and challenges the sufficiency of the evidence on appeal, so we review the Defendant's claim on the merits. *See id.* Reviewing the sufficiency of the evidence supporting a criminal conviction requires this court to first "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the evidence is insufficient to support the finding of guilt beyond a reasonable doubt, the finding of guilt "shall be set aside." Tenn. R. App. P. 13(e). Once a defendant has been convicted, the presumption of innocence is replaced with a presumption of guilt on appeal. *Turner v. State*, 394 S.W.2d 635, 637 (Tenn. 1965). To overcome a presumption of guilt on appeal, the defendant bears the burden of showing the evidence presented at trial was "insufficient for a rational trier of fact to find guilt of the defendant beyond a reasonable doubt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) (citing *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979)).

On appeal, the State "is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This court may not reweigh or reevaluate the evidence, because "[q]uestions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* at 236 (citing *Bland*, 958 S.W.2d at 659). After a guilty verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).

- 4 -

A defendant's guilt may be supported by direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Here, the Defendant was convicted of evading arrest through the use of a motor vehicle, which required the State to prove that the Defendant, "while operating a motor vehicle on any street, road, alley or highway in this state, . . . intentionally fle[d] or attempt[ed] to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1) (2018). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct." T.C.A. § 39-11-302(a) (2018).

When viewed in the light most favorable to the State, the evidence was sufficient for the jury to have found that the Defendant evaded arrest through the use of a motor vehicle. The evidence is undisputed that the Defendant drove her vehicle with Mr. Hart as her passenger out of the trailer park she lived in on May 15, 2019. Sergeant Greer testified that as he stood in the road with the Defendant's vehicle approaching him, he signaled for the Defendant to stop, issued verbal commands for her to stop, and drew his weapon and pointed it at her vehicle when she did not stop driving toward him. He also testified that the Defendant came within three feet of striking him with her vehicle and left the trailer park. Sergeant Greer pursued the Defendant's vehicle in his police cruiser and engaged his lights and siren. He chased the Defendant's vehicle for approximately one minute or a minute and a half before it stopped. Although the Defendant testified that she did not immediately recognize Sergeant Greer as a law enforcement officer and that she did not intentionally flee from him, the jury implicitly rejected this part of the Defendant's testimony and we do not revisit its credibility determinations on appeal. *Evans*, 108 S.W.3d at 236. The jury could have reasonably inferred from the Defendant's failure to yield to Sergeant Greer's commands to stop her vehicle at the trailer park and failure to stop the vehicle in response to his police cruiser's lights and siren that she intentionally fled from or attempted to elude law enforcement. *See* T.C.A. § 39-16-603(b)(1) (2018). Because the evidence was sufficient to support the Defendant's conviction of evading arrest through the use of a motor vehicle, the Defendant is not entitled to relief.

**CONCLUSION**

Based upon the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE