# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 15, 2004

## STATE OF TENNESSEE v. BILLY BRITTON, III

### Direct Appeal from the Criminal Court for Davidson County
### No. 2002-D-2440      Steve Dozier, Judge

---

### No. M2004-00448-CCA-R3-CD - Filed January 25, 2005

---

The defendant challenges his convictions for first degree premeditated murder and felony unlawful possession of a weapon. Specifically, he contends that: 1) the evidence was insufficient to support the element of premeditation; 2) the trial court improperly admitted the statement made by the victim identifying the defendant as the shooter; and 3) the trial court improperly denied his request for judicial use immunity for a prospective defense witness. After careful review of the record and applicable law, we affirm the convictions.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Ross E. Alderman, District Public Defender; and Jeffrey A. Devasher (on appeal), Emma Rae Tennent (on appeal), and J. Michael Engle (at trial), Assistant Public Defenders, for the appellant, Billy Britton, III.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela S. Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

The defendant, Billy Britton, III, was indicted on one count of first degree premeditated murder and one count of felony unlawful possession of a weapon. Following a jury trial, the defendant was convicted on both counts and received consecutive sentences of life and four years for the charges, respectively.

On the morning of June 17, 2002, the defendant and the victim, Quinton Collins, were engaged in an argument over ten dollars in rent money owed by the defendant to the victim's girlfriend. Following the argument, the victim told the defendant that he and his girlfriend

would have to vacate the apartment. Later that evening, eyewitness Robert Moore ("Moore") was outside his mother's apartment when he heard approximately two gunshots. He gathered his children and other family members and sent them inside.

Moore testified that he saw the defendant chasing the unarmed victim as the victim ran toward the apartment. Moore stated that, during the chase, the defendant was "cussing" and firing his gun; he further testified that he also heard the gun make a "clicking" noise, as if it was jammed. Moore further testified that, as the victim fell onto the porch of his mother's apartment, the defendant stood over the victim and stated: "I'm gonna kill you mother f--ker. I'm gonna kill you. You gonna remember me. You gonna" – "if you die or live, remember to tell the police, 'Billy done it, Billy done it.'" Moore then testified that the defendant fired approximately four more shots, "flashed" his gun, and fled the scene with another individual, later identified as Alrick Clardy.

As responding officers arrived, the victim was screaming, bleeding, and drifting in and out of consciousness. Two officers testified that, upon arriving, they asked the victim who shot him, to which the victim, in turn, identified the defendant by name and provided the defendant's address. Shortly thereafter, the victim was transported by ambulance to Vanderbilt Medical Center, where he died.

The defendant now challenges his convictions in this Court; specifically he contends that: 1) the evidence was insufficient to support the element of premeditation; 2) the trial court improperly admitted the statement made by the victim identifying the defendant as the shooter; and 3) the trial court improperly denied his request for judicial use immunity for a prospective defense witness.

Sufficiency

Initially, the defendant challenges the sufficiency of the evidence to support the element of premeditation. In determining sufficiency, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict, once approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Accordingly, the State is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences that may be drawn therefrom. Id. It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (2004). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-

202(d) (2004). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." Id.

The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our courts have delineated several circumstances that may be indicative of premeditation, including: declarations of the intent to kill, procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, shooting a victim after he turns to retreat or escape, making preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence, the defendant's failure to render aid to the victim, and calmness immediately after the killing. State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000); State v. Lewis, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000) (citations omitted).

Viewing the evidence in the light most favorable to the State, we conclude that sufficient evidence existed for a reasonable jury to find that the element of premeditation was satisfied. The testimony of the victim's girlfriend reflects that, on the morning of the shooting, the defendant and the victim were involved in an argument over ten dollars in rent money. Further, an eyewitness testified that he heard approximately two shots, saw the defendant chase the unarmed victim while continuing to fire, and watched as the defendant stood over the victim as he fell to the ground, stating: "I'm gonna kill you mother f--ker. I'm gonna kill you. You gonna remember me. You gonna" – "if you die or live, remember to tell the police, 'Billy done it, Billy done it.'" Finally, the eyewitness testified that the defendant fired approximately four more shots, "flashed" his gun, and fled the scene with another individual, later identified as Alrick Clardy.

Upon considering the aforementioned testimony, which was accredited by the jury, we conclude that there is sufficient evidence to uphold the defendant's conviction. The evidence reveals that the defendant shot an unarmed man who was attempting to flee, that he declared his intent to kill the victim prior to firing the final shots, that the defendant inflicted a series of shots on the victim over a substantial period of time, and that the defendant fled the scene and failed to render aid or summon help. As such, we hold that the circumstantial evidence, taken cumulatively, was sufficient for a rational trier of fact to find the element of premeditation beyond a reasonable doubt.

### Hearsay

Secondly, the defendant challenges the admission of the victim's statement identifying the defendant as the shooter. Specifically, the defendant asserts that the trial court erred in admitting the statement under the excited utterance exception because it was the product of reflective thought and, thus, did not qualify under that exception.

A hearsay statement is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Such a statement is not admissible unless it is shown to be admissible by way of an exception listed in the rules of evidence or otherwise by law. See Tenn. R. Evid. 802. Whether a statement constitutes hearsay and whether it is admissible via an exception to the hearsay rule is a determination that is left to the sound discretion of the trial court. See State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997). As such, we will not disturb the ruling of the trial court absent an abuse of that discretion. Id.

In the present case, the trial court admitted the victim's statement under the excited utterance exception, which is defined as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). On appeal, the defendant contends that the statement constituted inadmissible hearsay because it was in response to police questioning and thus lacked the spontaneity necessary to fall under the excited utterance exception. See State v. Payton, 782 S.W.2d 490, 494 (Tenn. Crim. App. 1989) (a statement admitted as an excited utterance "must have been a spontaneous reaction to the occurrence, not the result of reflective thought").

We disagree. The weight of authority persuades us that a statement is not automatically precluded from the excited utterance exception merely because it is made in response to a question. Rather, the pertinent inquiry is whether the statement was made under the "excitement or stress of the event," taking into consideration the fact that the statement was in response to a question. See State v. Gordon, 952 S.W.2d 817, 820-21 (Tenn. 1997) (citing State v. Smith, 857 S.W.2d 1, 9) (Tenn. 1993) ("statements made in response to questions may still be admissible if the declarant is under the excitement or stress of the event")); Delbert Lee Harris v. State, No. M2002-00777-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 231, at *2 (Tenn. Crim. App., Nashville, March 19, 2003), perm. to appeal denied (Tenn. 2003) ("the fact that a question prompted the excited answer is a circumstance relevant to stress, but it does not automatically bar the statement's admission under Rule 803(2)").

In the present case, the officers arrived soon after the victim had been shot. Witnesses testified that the victim was screaming, bleeding, and drifting in and out of consciousness. When officers asked the victim who shot him, the victim identified the defendant as the shooter and provided the defendant's address. We agree with the trial court that this statement was certainly made under the stress of a startling event, notwithstanding the fact that police questioning elicited the statement. As such, we conclude that the trial court properly admitted the victim's statement as an excited utterance.

## Judicial Use Immunity

Finally, the defendant challenges the denial of judicial use immunity for potential defense witness, Alrick Clardy ("Clardy"). Specifically, the defendant asserts that, in denying immunity, he was deprived of a fair trial and his right to present a defense. He avers that Clardy would have provided exculpatory testimony with regard to the element of premeditation and that the proffered testimony was essential to his defense.

Instructive in the analysis of this issue is this Court's recent opinion in State v. Monqueze L. Summers, No. M2003-00379-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 788 (Tenn. Crim. App., at Nashville, Sept. 15, 2004). In that case, the defendant sought judicial use immunity for a defense witness who the defendant claimed would provide exculpatory testimony by testifying that the defendant was not the gunman. Id. at \*21. In declining to answer the questions surrounding the status of judicial use immunity for defense witnesses, this Court concluded that, "even if defense-benefitted use immunity were established in Tennessee, the defendant has not presented facts which would support its application in his case." Id.

Prior to determining the issue of judicial use immunity, the court analyzed whether the defendant's constitutional right to present a defense had been violated. Id. at \*21-22. In conducting that analysis, this Court reviewed three factors as they applied to the facts of the case:
1)  Whether the excluded evidence is critical to the defense;
2)  Whether the evidence bears sufficient indicia of reliability; and
3)  Whether the interest supporting exclusion of the evidence is substantially important.
Id. (citing State v. Brown, 29 S.W.3d 427, 433-34 (Tenn. 2000).

Upon determining that the testimony was not critical to the defense, this Court held that the defendant could not establish a constitutional claim, thus the "bid for use immunity must fail." Id. at \*22.

In applying that analysis to the present case, we also conclude that the defendant cannot satisfy the requirements for establishing a constitutional claim because the proffered testimony is not critical to the defendant's case. We note that the defendant has not alleged, either in the trial court or on appeal, what information Clardy's anticipated testimony would provide, if elicited. Rather, the defendant, in an encompassing manner, states in his brief that Clardy's testimony, "would provide exculpatory evidence regarding the actions of the defendant and the victim during their encounter in the field, and [is] therefore crucial to his defense."

Moreover, even if the proffered testimony established provocation by the victim during the initial encounter, that testimony would not negate the overwhelming circumstantial evidence of premeditation that was presented at trial and endorsed by the jury. As aforementioned, the jury accredited the testimony of eyewitness Moore, who stated that the defendant chased and shot at the unarmed victim; stated his intention to kill the victim before firing the final shots; and fled the scene, failing to render or summon aid. These circumstances were found by the jury to establish the element of premeditation; any provocation which may have occurred previously would be of little consequence in disputing the testimony of the defendant's actions thereafter.

Therefore, because the defendant failed to present any substance of Clardy's anticipated testimony, and because, even if presented, the testimony would not negate the evidence of premeditation occurring after the initial encounter, we hold that Clardy's testimony was not critical to the defense. As such, the defendant's constitutional right to present a defense has not

been violated and, even if established in this state, the defense witness is not a proper subject for application of judicial use immunity.

## Conclusion

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE