IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2009

## STATE OF TENNESSEE v. DEMARIO JOHNSON aka LEO SCOTT

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-05748    Chris Craft, Judge**

**No. W2008-01665-CCA-R3-CD  -  Filed October 29, 2009**

The defendant, Demario Johnson, a.k.a. Leo Scott, was convicted of first degree (premeditated) murder and sentenced to life imprisonment. On appeal, he argues that: the evidence was insufficient to support his convictions; the trial court improperly responded to a juror's question; and the trial court erred in admitting photographs into evidence. After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Brett Stein, Memphis, Tennessee, for the appellant, Demario Johnson aka Leo Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William L. Gibbons, District Attorney General; and Alanda Dwyer and Colin Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

This case involves the shooting death of an innocent bystander when the defendant fired shots into an apartment where he intended to shoot his roommate. The day before the shooting, the defendant and his roommate fought over money, resulting in the roommate beating the defendant unconscious. The roommate called the police, and the defendant was taken to the hospital where he was treated and released. After the defendant was released from the hospital, he filed a police report, obtained a handgun, and proceeded to an apartment where his roommate was helping some friends move. Upon arriving, the defendant fired multiple shots into the apartment and wounded four people, including the roommate and the victim, who died four months later of complications from the gunshot wound.

At trial, Delano Bonds, Jr., testified that the victim was his father. The victim was sixty-four years old at the time of his death. Bonds said that the victim was paralyzed from the mid-chest down

as a result of the gunshot wound and had multiple episodes of pneumonia during his hospitalization. The victim was in the hospital from June to October 2005, when he was moved to a nursing home. He died two days after he was moved to the nursing home. His autopsy revealed the cause of death was bronchial pneumonia, which developed as a result of a complication from a gunshot wound. The death was determined to be a homicide.

Alicia Maxwell testified that the victim was her grandfather and that she lived with him at the time of the shooting. She testified that Kevin Johnson, the defendant's roommate, was helping her family move on the day of the shooting. She knew the defendant as "Dino." She recalled hearing a knock on the door and hearing the defendant say, "What it is, what it ain't." The defendant then began to shoot. Maxwell heard five gunshots. She saw that Johnson, Brittany Mathis, and Joshua Warren were shot. She did not know that the victim had been shot but recalled that he kept telling them he was in pain.

Kevin Johnson testified that he knew the defendant because they were roommates. He knew the defendant as Leo Scott, and they lived together for approximately six or seven months. Johnson was employed at a grocery store. He testified that he paid the rent for their apartment because the defendant was unemployed. He confronted the defendant about some of his money being missing. The defendant became angry at the confrontation and wanted to fight. Johnson testified that he knocked the defendant unconscious and called the police to help the defendant.

Johnson testified that the shooting occurred the next day while he was helping Josh Warren's family move out of their apartment. He did not see the defendant again between the time of the fight and the shooting. Johnson said that they had been packing boxes inside the apartment for fifteen to twenty minutes when they heard a knock at the door. He heard someone ask for Josh and saw Josh walk to the couch and sit down. He saw the defendant through the crack in the door, and the defendant began shooting at him. Johnson was shot in the shoulder, near his chest, and he retreated to the rear of the apartment to lie down. He was transported to the hospital by paramedics.

Alisa Bonds testified that she was the victim's daughter and the mother of Alisha Maxwell and Joshua Warren. She testified that they were in the process of moving when the defendant fired shots into their home. She first saw the defendant briefly before he began shooting. She said that the defendant shot through the door. The defendant had been at the home earlier and was involved in an altercation with her son. She told her son to go inside and told the defendant to leave; he complied. She recalled that the defendant returned approximately thirty minutes later.

When the defendant returned, his girlfriend knocked on the door and asked to speak to Joshua. Ms. Bonds saw that the defendant had a gun and told the girlfriend that Joshua was not coming outside. She shut the door and heard five gunshots. She denied that she invited the defendant to her house.

Officer Vance Stacks testified that he received a call around 2:30 or 3:00 on June 17, 2005, to go to an apartment on Dwight Avenue. When he arrived, he noticed that the closed door had holes in it. When he entered the apartment, there was a female on the floor screaming that she had been shot. He was told that "Dino" had been the shooter and later learned that "Dino" was the defendant.

He saw the victim sitting on the couch and asked if he was all right. The victim just looked at him. He moved the victim and saw blood coming from his back. He also observed a bullet hole in the couch. The four victims were transported to the hospital by ambulance.

Officer Clifton Johnson testified that he interviewed the defendant and took a statement from him. The defendant told the officer that he was at 2631 Dwight on June 17, 2005, and that he had shot the four victims. The defendant told the officer that he went to the apartment because he saw Josh Warren's mother and she told him to come by. He claimed that he had been robbed and attacked by Johnson. The defendant was talking to Warren's mother at the apartment when Johnson opened the door and approached him. The defendant told the officer that he was frightened because "they" said they would kill him. The defendant said that he shot the people with a nine-millimeter automatic weapon and then disposed of the gun.

A paramedic testified that he was dispatched to 2853 Harold Lane regarding an assault complaint. He met with the defendant who had a knot on his head and a laceration to his forehead. The defendant told the paramedic that he had been assaulted with an unknown object but did not tell him who assaulted him. The paramedic was able to control the defendant's bleeding, gave him oxygen, started an intravenous line, immobilized his spine, and then transported him to the hospital.

Officer Walter Burns testified that he was dispatched to 2238 Airways to take a report from the defendant on June 16, 2005. The defendant, who had a bandage on his head, told the officer that he had been robbed by Kevin Johnson, James Callaway, Joshua Warren, and Brittany Mathis.

Analysis

On appeal, the defendant contends that the evidence was not sufficient to support his conviction for first degree (premeditated) murder. Specifically, the defendant contends that the time elapsed between the altercation with Johnson and the shooting was not sufficient to allow his mind to be free from excitement and passion as to be capable of forming the requisite premeditation to commit the convicted offense.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable

and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," *State v. West*, 844 S.W.2d 144, 147 (Tenn. 1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." T.C.A. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

The element of premeditation is a question of fact to be determined by the jury. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *State v. Bordis*, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our supreme court delineated several circumstances that may be indicative of premeditation, including declarations of the intent to kill, procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, the making of preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence, and calmness immediately after the killing. *State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000).

In *Millen v. State*, 988 S.W.2d 164, 164-66 (Tenn. 1999), the defendant intentionally fired a gun at a specific person, but inadvertently killed a random victim. Our supreme court determined that Tennessee Code Annotated section 39-13-202 did not limit its application to the intended victim but incorporated the doctrine of "transferred intent" to allow application to any victim if the intent existed to murder a specific person. The court stated that the common law history of "transferred intent" has little application under our modern statutory law. *Id.* at 167. The court concluded that if a defendant has the intent to kill an intended victim and an innocent bystander is killed, the element of intent will be satisfied. *Id.* at 168.

A review of the record reveals that the defendant was treated and released from the hospital following his fight with his roommate. After his release from the hospital, the defendant filed a police report, armed himself, and went to the apartment where his roommate was helping friends

-4-

move.  The defendant fired multiple shots into the apartment, injuring four people including his roommate and the deceased victim, and then fled the scene.

The evidence presented at trial indicates that the defendant intended to shoot and kill Kevin Johnson, his roommate, but shot and killed the victim instead.  The record reflects that the defendant formed the requisite intent to kill Johnson; therefore, the doctrine of transferred intent was applicable here.  The evidence was sufficient to support the defendant's conviction for murder.

Next, the defendant argues that the trial court improperly responded to a jury question regarding a statement not entered into evidence.  The defendant did not object to this at the time the trial court responded to the question.  Ordinarily, by failing to make a contemporaneous objection to testimony, a defendant waives appellate consideration of the issue.  Tenn. R. App. P. 36(a); *State v. Adler*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Here, a witness testified that she heard the defendant say, "What it is, what it ain't."  On cross-examination, she testified that she did not mention the defendant's announcement when she gave her original statement.  After the witness was excused, a juror asked to see the statement made by the witness.  The trial court declined to allow the juror to see the statement, and the defendant did not object to the statement made by the trial court.  His failure to raise a contemporaneous objection results in a waiver of this issue.

Next, the defendant argues that the trial court erred in admitting into evidence a photograph of the deceased victim depicting the entry of the bullet.  Specifically, he contends that the photographs were irrelevant because there was no dispute as to the cause of death and that their entry into evidence constitutes plain error.  Again, the defendant did not enter a contemporaneous objection when the photographs were admitted.

The admissibility of photographs lies within the sound discretion of the trial court, whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion.  *State v. Reid,* 213 S.W.3d 792, 838 (Tenn. 2006); *State v. Banks,* 564 S.W.2d 947, 949 (Tenn. 1978); *State v. Lacy*, 983 S.W.2d 686, 694 (Tenn. Crim. App. 1997).  Nevertheless, the photograph must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact.  *State v. Braden*, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).  "Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases."  *State v. Morris*, 24 S.W.3d 788, 810 (Tenn. 2000).  We, therefore, must determine whether the photographs were relevant.  Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Tenn. R. Evid. 401.

The forensic pathologist who performed the autopsy on the victim used the photographs to show the entry wound of the bullet.  The defendant did not object to the doctor's testimony or the use of the photographs.  The defendant has failed to establish that the trial court abused its discretion in allowing the admission of the photographs.  The photographs were relevant to show that the

victim sustained a gunshot wound to his back that ultimately led to his death. The photographs depict a scar where the victim sustained the gunshot. There is nothing gruesome or horrifying about the photographs. Therefore, the trial court did not abuse its discretion in admitting the photographs.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE