IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2020

## STATE OF TENNESSEE v. RICKY LEE WOMAC

**Appeal from the Circuit Court for McMinn County**
**No. 16CR181          Andrew Mark Freiberg, Judge**

_____

### No. E2019-00643-CCA-R3-CD

_____

A McMinn County jury convicted the Defendant, Ricky Lee Womac, of two counts of attempted first degree premeditated murder and one count of reckless endangerment. In a separate proceeding, the Defendant pleaded guilty to possession of a firearm by a convicted felon. For these convictions, the trial court sentenced the Defendant to serve an effective sentence of eighty years in the Tennessee Department of Correction. On appeal, the Defendant asserts that the evidence is insufficient to support his convictions for attempted first degree premeditated murder and that his trial counsel was ineffective. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined, and ROBERT H. MONTGOMERY, JR., J. filed a separate opinion concurring in part and dissenting in part.

D. Mitchell Bryant (at sentencing and on appeal), Athens, Tennessee; and Meredith M. Ziebold and Kristen Williams (at trial), Chattanooga, Tennessee, for the appellant, Ricky Lee Womac.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Emily E. Patton and Joseph V. Hoffer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an incident that occurred inside a Walmart store in Athens, Tennessee, on February 7, 2015. Police officers attempted to arrest the Defendant, who

was shopping at Walmart, for an outstanding warrant, and the Defendant attempted to evade arrest with the use of a gun. A McMinn County grand jury indicted the Defendant for two counts of attempted first degree premeditated murder, one count of reckless endangerment, one count of possession of a firearm by a convicted felon, and one count of resisting arrest.[1] In a separate proceeding, the Defendant pleaded guilty to possession of a firearm by a convicted felon, and the other three counts were tried by a jury.

At trial, the parties presented the following evidence: McMinn County Sheriff's Office narcotics investigator Deputy Jared Price testified that on February 7, 2015, he was off-duty, armed but in plain clothing, and shopping at Walmart. When he entered the store, he saw the Defendant and called dispatch to confirm whether there was an outstanding warrant for the Defendant's arrest. Upon confirmation, Deputy Price requested that uniformed officers report to Walmart and arrest the Defendant. Deputy Price testified that he "kept a visual" on the Defendant until Deputies Paul Redrup and Dillon Presswood arrived.

Deputy Price testified that the Defendant was standing alone in a checkout aisle when Deputies Redrup and Presswood approached him. Deputy Presswood stood behind the Defendant while Deputy Redrup stood to the right of the Defendant, with the conveyor belt to the Defendant's left. Deputy Price positioned himself at the exit end of the checkout aisle, at a distance where he was close enough to observe the interaction but far enough away that he could not hear what was being said. Deputy Price observed the Defendant pull something out of his left pocket and then heard Deputy Redrup yell, "Gun."

Deputy Price testified that he was initially unable to discern what the Defendant removed from his pocket. After hearing Deputy Redrup identify the item as a gun, he focused more intently on the Defendant's hand, and as Deputy Redrup attempted to grab the gun, Deputy Price saw the barrel of the gun. In response, Deputy Price pulled out his weapon but was unable to get a "clear shot" due to the presence of other people in the area. He re-holstered his gun and entered the physical struggle with the Defendant. Deputy Price stated that he struck the Defendant in the face, and the Defendant released the gun. Deputy Price then grabbed the Defendant and detained him on the ground where the Defendant continued to resist. The deputies placed the Defendant in handcuffs and took him out to a patrol car. A Walmart surveillance video of the incident was admitted into evidence and viewed by the jury.

Deputy Presswood testified that he and Deputy Redrup, who were both in uniform, reported to the Athens Walmart to serve an arrest warrant on the Defendant. Deputy

---

[1] Upon motion of the State, the charge for resisting arrest was later dismissed.

Presswood observed the Defendant standing in a checkout aisle, attempting to pay for a Coke. As the deputies approached, the Defendant turned and looked directly at them. Deputy Presswood stood behind the Defendant in the aisle, and Deputy Redrup moved around to the Defendant's right side and informed the Defendant of the arrest warrant. In response, the Defendant stated, "Let me just pay for my Coke. I'll drink it on the way to the car." Deputy Presswood described the Defendant as "very twitchy" and "nervous." His behavior caused Deputy Presswood concern about the possibility of a weapon.

Deputy Presswood testified that he did not see when the Defendant initially produced a gun but that he heard Deputy Redrup scream, "Gun, gun, gun." As Deputy Redrup struggled with the Defendant, Deputy Presswood unsuccessfully attempted to pull the Defendant, from behind, away from the struggle to allow Deputy Redrup to gain control of the gun. The struggle moved from the checkout aisle to the main aisle that ran the width of the store at the exit end of the checkout aisle. At that point, Deputy Price entered the struggle and punched the Defendant. The deputies forced the Defendant to the ground and Deputy Redrup took control of the Defendant's gun.

Deputy Presswood testified that, once the Defendant was on the ground, he refused to comply with the deputies' orders to show his hands. The deputies physically took the Defendant's arms and moved them behind his back. Deputy Presswood testified that the Defendant's gun was loaded and additional rounds for the gun were in the Defendant's pocket.

Deputy Redrup testified that on February 7, 2015, he served an arrest warrant on the Defendant, who was inside a Walmart. The deputies approached the Defendant in the checkout aisle, and Deputy Redrup asked the Defendant to come with him. The Defendant responded that he was going to pay for his Coke and that he would drink it before he reached "the car." Deputy Redrup advised the Defendant that he could not take the Coke with him. Deputy Redrup believed the Defendant was attempting to "stall." Deputy Redrup explained that this type of behavior was concerning to him because it could indicate the Defendant had an ulterior motive to either attack or attempt flight. The Defendant again asked if he could purchase the drink, and Deputy Redrup told him, "No, sir." The Defendant returned the money in his left hand to his left pocket and withdrew a "nickel plated revolver."

Deputy Redrup testified that the Defendant's hand was on the grip of the gun and his finger on the trigger as he pointed the gun at Deputy Redrup. Deputy Redrup used his left hand to push the gun away and grab the barrel of the gun. A struggle for possession of the gun ensued, and the men moved out to the main aisle at the end of the checkout line. Deputy Redrup recalled that the Defendant had a "firm grip" on the revolver and was not letting go. He believed that he was in "a fight for [his] life at that point." To

prevent the Defendant from firing the gun, Deputy Redrup "jammed" his right hand in the space between the hammer and the rest of the gun, an area he described as "the action of the gun." Deputy Redrup described his encounter with the Defendant as "an active fight" during which he had to struggle "with every bit of strength" to obtain control over the weapon. Deputy Redrup said that he felt "immediate pain" in the webbing of his right hand when the hammer of the gun made contact as a result of the trigger of the weapon being pulled.

Deputy Redrup wore a body camera at the time of the offenses, and the footage from the body camera was admitted into evidence and viewed by the jury. Deputy Redrup confirmed that the gun was fully loaded. Deputy Redrup identified a photograph of the injury to his right hand as a result of the Defendant pulling the trigger of the gun.

Based upon this evidence, the jury convicted the Defendant of two counts of attempted first degree premeditated murder and one count of reckless endangerment. The Defendant pleaded guilty to possession of a firearm by a convicted felon. The trial court sentenced the Defendant to serve an effective sentence of eighty years in the Tennessee Department of Correction. It is from these judgments that the Defendant appeals.

## II. Analysis

The Defendant asserts that the evidence is insufficient to support his convictions for attempted first degree premeditated murder and that his trial counsel was ineffective. The State asks this court to affirm the judgments in all respects.

## A. Sufficiency of the Evidence

The Defendant asserts that there is insufficient evidence to support his conviction for attempted first degree premeditated murder of Deputy Redrup (Count 1) and attempted first degree premeditated murder of Deputy Presswood (Count 2). He argues that the State failed to prove premeditation as to both counts and that it failed to offer any proof that the Defendant "pointed the gun at [Deputy] Presswood at any point-in-time." The State responds that the detailed testimony from three deputies and video footage of the incident consistent with the deputies' testimony provided sufficient evidence that the Defendant progressed substantially toward completing his plan of escape by killing the deputies who were going to arrest him.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R.

App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of

- 5 -

guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

First degree murder is defined as a "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1) (2018). Premeditation refers to "an act done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d) (2018). Whether the defendant premeditated the killing is for the jury to decide, and the jury may look at the circumstances of the killing to decide that issue. *Bland*, 958 S.W.2d at 660. The Tennessee Code states that, while "the intent to kill must have been formed prior to the act itself," that purpose need not "pre-exist in the mind of the accused for any definite period of time" for a defendant to have premeditated the killing. T.C.A. § 39-13-202(d). As relevant to this case, the jury may infer premeditation from the establishment of a motive for the killing and evidence of procurement of a weapon. *State v. Leach*, 148 S.W.3d 42, 54 (Tenn. 2004); *State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000).

A conviction for attempted first degree murder requires proof that the defendant intended to kill the victim "after the exercise of reflection and judgment" and either intentionally engaged in the conduct constituting the offense, believed the conduct would cause the intended result without further conduct, or the conduct constitutes a substantial step toward the commission of the offense. T.C.A. § 39-13-202(d); *see* T.C.A. § 39-12-202(a)(1) and § 39-12-101.

The evidence in this case, viewed in the light most favorable to the State, showed that deputies approached the Defendant, who was carrying a concealed weapon, in Walmart to serve an outstanding warrant for his arrest. Deputy Redrup asked the Defendant to come with him, and the Defendant delayed compliance with this instruction by seeking to complete his purchase. Both deputies testified about their concern related to the Defendant's "twitchy," "nervous" behavior and his attempts to delay execution of the arrest warrant. Deputy Redrup twice told the Defendant he would be unable to complete his purchase before the Defendant returned the money that he had been holding in his hand into the pocket where his loaded gun was held. The Defendant withdrew the gun and with his finger on the gun's trigger and his thumb on the pulled back hammer, pointed the gun at Deputy Redrup. Deputy Redrup and Deputy Presswood then engaged in an unsuccessful attempt to gain control over the gun with their struggle moving into a main aisle. Deputy Redrup used his hand to block the hammer of the gun from making contact and struggled "with all his strength," but the Defendant's grip remained strong on the gun. Ultimately, a third officer, Deputy Price, had to enter the struggle and strike the Defendant in order for the deputies to force the gun from the Defendant's control. Even

after Deputy Redrup had the gun, the Defendant continued to struggle with the deputies, refusing to display his hands.

This evidence supports the jury's conclusion that the Defendant intended to shoot and kill Deputy Redrup and Deputy Presswood in an attempt to evade arrest. The deputies approached the Defendant to arrest him and the Defendant engaged in delay tactics while formulating a plan to use his gun to escape arrest. The Defendant pulled a fully-loaded gun from his pocket and aimed it at Deputy Redrup. The hammer was cocked, and the Defendant pulled the trigger. But for Deputy Redrup's hand jammed "in the action" of the gun, it is reasonable to believe that the gun would have fired. Based upon these circumstances, a rational jury could reasonably infer that pulling out the loaded pistol was a "substantial step" toward shooting and killing both uniformed deputies who were attempting to arrest him.

The Defendant asserts that, because there was no testimony that he pointed the gun directly at Deputy Presswood, his conviction in Count 2 is not supported by sufficient evidence. In our view, a rational jury could conclude that the Defendant's physical confrontation with Deputy Presswood while brandishing a weapon demonstrated his intent to shoot Deputy Presswood to escape arrest. Deputy Presswood and Deputy Redrup approached the Defendant based upon an outstanding warrant for the Defendant's arrest. When the Defendant learned of his imminent arrest, he began to "stall" giving both officers concern that the Defendant was formulating a plan to escape the arrest. Consistent with his behavior and the deputies' suspicions, the Defendant reached in his pocket and pulled out a gun. He initially aimed the gun at Deputy Redrup, who was standing to his right and talking with him; however, the Defendant physically struggled against both Deputy Redrup and Deputy Presswood, while brandishing the loaded weapon and refusing to relinquish his gun. The Defendant's motivation in brandishing the gun was to avoid his arrest. *See Leach*, 148 S.W.3d at 54. A jury could reasonably infer that the Defendant's plan to evade arrest would involve both of the deputies attempting to arrest him. The Defendant's act of brandishing a weapon and engaging in a physical struggle with Deputy Presswood and Deputy Redrup shows a substantial step toward shooting the deputies attempting to arrest him, and thereby escaping arrest.

Accordingly, we conclude that the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find the Defendant's conduct constituted a substantial step toward the killing of the deputies, as evidenced by his brandishing a gun, trying to shoot Deputy Redrup, and struggling against Deputy Presswood for control of the gun. The Defendant acted with premeditation by engaging in delay tactics when the deputies told him of his imminent arrest, giving the Defendant the opportunity to decide to exchange the money in his hand for the concealed gun and execute an escape. This is evidence from which a jury could find beyond a reasonable

doubt that the Defendant was guilty of attempted first degree premeditated murder for his actions toward Deputy Redrup and Deputy Presswood. The Defendant is not entitled to relief as to this issue.

## B. Ineffective Assistance of Counsel

The Defendant contends that his trial counsel was ineffective for failing to develop proof of his diminished capacity, which he asserts would have affected the issue of premeditation. The State responds that the Defendant has waived our review of this issue for failure to provide a transcript of the motion for a new trial hearing. We agree with the State.

Based upon the record before us, the Defendant first referenced a potential ineffective assistance of counsel claim at the guilty plea hearing for possession of a firearm by a convicted felon charge. At the hearing, the trial court asked the Defendant if he was happy with trial counsel's representation and the following exchange ensued:

| | |
|---|---|
| Defendant: | "[Y]eah." |
| | . . . . |
| Trial Court: | [D]id she go over everything with you? |
| Defendant: | "Yeah." |
| Trial Court: | Is there anything that you wanted her to do as far as investigation or legal research that she has not done? |
| Defendant: | As far as legally, no, sir. |
| Trial Court: | All right. Do you have any complaints at present to make about [trial counsel]? |
| Defendant: | Other than I wish she'd asked more questions. I mean, that's what my appeals are gonna be based on. |

The Defendant then raised two issues with respect to ineffective assistance of counsel in his motion for new trial. On appeal, he only maintains one of the two issues, that trial counsel failed to develop proof of his diminished capacity at the time of the offenses. As the State correctly notes, however, the Defendant did not include the transcript of the motion for new trial in the record.

When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. *See* T.R.A.P. 24(b) (mandating that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"). The Defendant has failed to properly preserve this issue for appeal.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE