IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 12, 2021 Session

**STATE OF TENNESSEE v. TANNER BRADY BURGESS**

**Appeal from the Circuit Court for Montgomery County**
**No. CC18-CR-585  William R. Goodman, III, Judge**

_____

**No. M2020-00050-CCA-R3-CD**

_____

Defendant, Tanner Brady Burgess, was indicted by the Montgomery County Grand Jury in a three-count indictment for premeditated first degree murder, possession of a firearm during the commission of a dangerous felony, and aggravated assault resulting in the victim's death.  Following a bench trial, the trial court found that the State had not proven beyond a reasonable doubt that Defendant's shooting of the victim was the cause of the victim's death.  Accordingly, the trial court found Defendant guilty of the lesser-included offense of attempted voluntary manslaughter in Count 1, possession of a firearm during the commission of a dangerous felony in Count 2 and aggravated assault in Count 3.  The court did not identify the element forming the basis for Defendant's aggravated assault conviction in Count 3.  Following a sentencing hearing, the trial court imposed an effective sentence of nine years' incarceration.  In this appeal as of right, Defendant contends that: 1) the evidence at trial was insufficient to sustain his conviction for attempted voluntary manslaughter because the proof did not establish beyond a reasonable doubt that Defendant intended to cause the victim's death; and 2) the judgment of conviction in Count 3 incorrectly reflects a conviction for aggravated assault resulting in death, which carries a mandatory release eligibility of 75 percent, rather than aggravated assault resulting in serious bodily injury, which carries a standard release eligibility of 30 percent.  Following our review, we affirm the judgments of the trial court in Counts 1 and 2; however, because of inconsistencies between the verdict as announced by the trial court, the sentence as announced at the sentencing hearing, and the sentence as recorded on the judgment form, we remand for clarification and entry of a corrected judgment form in Count 3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed in Part and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Kendall Fisher Stivers (on appeal); Roger Eric Nell, District Public Defender; Crystal L. Myers, Assistant District Public Defender, Clarksville, Tennessee (at trial), for the appellant, Tanner Brady Burgess.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin Ball and David Findley, Assistant Attorneys General; John W. Carney, Jr., District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts Presented at Trial*

In September, 2017, Defendant lived with his fiancée, Lajasmin Gaines, and their three daughters across the street from the victim, Michael Kehoe, who had moved from Chicago to live with his brother, Keith Reynolds, Sr., in August, 2017. On September 24, 2017, at around 5:00 a.m., Mr. Reynolds heard "a bang, bang, like somebody was banging on [his door], like somebody hit [his] door twice." Mr. Reynolds opened the door and saw Mr. Kehoe on the ground beside the mailbox. Mr. Reynolds told Mr. Kehoe to come inside the house, and Mr. Kehoe said, "[t]he white boy across the street just shot me."

Kiefer Todd was with Mr. Kehoe the night before and the morning of the shooting. Mr. Todd testified that Mr. Kehoe was intoxicated. When they arrived at Mr. Reynolds' residence, they saw "two girls fighting" in the street. Mr. Kehoe got out of the vehicle and tried to break up the fight. Defendant came out of his house and told Mr. Kehoe not to touch the women. According to Mr. Todd, Mr. Kehoe "put his hands up" and backed away. Defendant then ran toward Mr. Kehoe trying to hit him, and Defendant and Mr. Kehoe began fighting. Mr. Todd testified that Defendant threatened that "he had an AK" and ran back inside his house. Mr. Kehoe turned and walked towards Mr. Reynolds' house. Mr. Todd got in his vehicle and began to drive away. He testified that he heard two gunshots as he pulled away.

Keith Reynolds, Jr., Mr. Kehoe's nephew witnessed the fight between Defendant and Mr. Kehoe. He testified that he "took off" when Defendant ran into his house and said that he was going to get his gun. He also testified that he heard two gunshots as he drove away.

Officer Joseph Aragon, of the Clarksville Police Department, responded to the scene of the shooting. When Officer Aragon arrived, other officers had already surrounded Defendant's house. Police found Defendant in the woods behind his house. Defendant had blood on his face and stated that he had been "beat[en] up." Defendant smelled of

alcohol. Defendant was placed in custody and taken to a hospital for treatment for his injuries.

Sergeant Beau Skinner, of the Clarksville Police Department, testified that when he arrived at the scene, he spoke to Tinisha Majors, one of the individuals involved in the altercation. He testified that Ms. Majors had a "real bad swollen black eye." In speaking to witnesses, Sergeant Skinner discerned that there had been an argument between Ms. Majors and her brother, Bobby Lee Majors. Lajasmin Gaines tried to intervene, and she and Ms. Majors began to fight. Ms. Gaines struck Ms. Majors in the face. Ms. Majors testified that she was "on the ground getting beat up" when she heard gunfire. She did not recall how many gunshots she heard. She testified that she "was drunk" and that she "dr[a]nk a half a gallon by [her]self."

Ms. Gaines testified that she and Defendant had been drinking and "hanging out" with her cousins Tinisha Majors and Bobby Lee Majors. At around 5:00 a.m. on September 24, 2017, Mr. Majors wanted to leave. Defendant told Ms. Gaines to take them home. Mr. Majors and his fiancée and child got into Ms. Gaines's vehicle. Ms. Majors, however, refused to leave and began walking up the street. Ms. Gaines and Ms. Majors began to fight in the middle of the street. Ms. Gaines saw several men standing around their vehicles on the other side of the street. She heard them "laughing about the fight, and stuff, and watching it." Ms. Gaines then heard "scuffling from [Defendant]." She saw Defendant "fighting with, like, three or four guys." She testified that she saw Defendant "being chased into the house." Ms. Gaines ran to her vehicle and drove away. She did not hear any gunshots.

Police did not find a weapon. However, a gun case consistent with some kind of long gun was found inside Defendant's home by a closet near the front door. Sergeant Skinner observed blood on Defendant's front porch. Detective Cory Coleman, of the Clarksville Police Department, testified that he found one spent shell casing, consistent with the caliber used in a hunting rifle, right inside of Defendant's front door.

Mr. Kehoe was hospitalized for eight days at Vanderbilt Hospital. He was discharged on October 2, 2017. After his discharge, he was in a great deal of pain and required a walker. On October 7, 2017, Mr. Kehoe tripped and fell while using his walker. Mr. Reynolds helped Mr. Kehoe into the kitchen and called 9-1-1. Mr. Kehoe complained of pain in his leg. Paramedics helped him walk to the ambulance. He later died of cardiac arrest.

The State's medical expert, Dr. David Zimmerman, performed an autopsy of the victim's body. Dr. Zimmerman opined that Mr. Kehoe died from complications of the gunshot wound to his upper leg and scrotum, which exacerbated his preexisting medical

conditions, including obesity and an enlarged heart, resulting in an abnormal heart rhythm. He agreed on cross-examination, however, that death from a gunshot wound resulting in abnormal heart rhythm would usually occur closer in time to the injury.

Defendant did not testify but presented the testimony of an expert, Dr. Gregory Davis, who opined that the manner of death was undetermined. He testified that there were competing causes of death and that "[t]he significance of and possible contribution to death from the gunshot wound is uncertain." Dr. Davis concluded that Mr. Kehoe died from multiple causes resulting from complications of an enlarged heart, obesity, and two prescribed medications.

Based upon this proof, the trial judge found Defendant guilty of attempted voluntary manslaughter in Count 1, possession of a firearm during the commission of a dangerous felony in Count 2, and aggravated assault in Count 3.

*Sufficiency of the Evidence*

Defendant contends that the evidence at trial was insufficient to sustain his conviction for attempted voluntary manslaughter. Specifically, Defendant argues that the State failed to establish that Defendant "was reasonably certain that the single shot he fired into [the victim]'s leg was a substantial step that was reasonably certain to kill [the victim], rather than cause serious bodily injury." The State responds that the evidence supports Defendant's conviction. We agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13 (e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978).

After a guilty verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). Upon establishing the requisite intent, one is guilty of attempted voluntary manslaughter when he "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101 (a)(3).

This Court has held that pointing a gun at someone and discharging it is sufficient to sustain the "knowing" element of second degree murder. *See State v. Anthony Bayman*, No. W2014-01537-CCA-R3-CD, 2015 WL 12978649, at *6 (Tenn. Crim. App. Aug. 17, 2015), *perm. app. denied* (Tenn. Dec. 14, 2015); *State v. Randy Ray Ramsey*, No. E2013-01951-CCA-R3-CD, 2014 WL 5481327, at *6-7 (Tenn. Crim. App. Oct. 29, 2014), *perm. app. denied* (Tenn. Jan. 16, 2015); *State v. William Lamont Green*, No. M2010-01631-CCA-R3-CD, 2011 WL 2893088, at *5 (Tenn. Crim. App. July 20, 2011), *perm. app. denied* (Tenn. Nov. 15, 2011) (determining evidence was sufficient for second degree murder where the defendant shot the victim in the leg and claimed that he aimed at the ground and shot only to scare the victim).

The State argues that the trial court could reasonably find that Defendant knowingly shot at Mr. Kehoe with the intent to kill him. We agree. Defendant did not deny that he shot Mr. Kehoe. The evidence showed that Defendant and Mr. Kehoe engaged in a physical altercation prior to the shooting. Defendant threatened that he "had an AK." Defendant retrieved a gun from his home, aimed the gun at Mr. Kehoe, and fired at least one shot at him. Witnesses testified that they heard two shots. There was no proof that Defendant aimed only at Mr. Kehoe's leg, but even assuming there had been, the trial court could have rejected it and found that Defendant knowingly shot at Mr. Kehoe with the intent to kill him. Defendant is not entitled to relief on this issue.

*Aggravated assault conviction*

Defendant asserts that the judgment form Count 3 reflects a conviction for aggravated assault resulting in the victim's death and a release eligibility of 75 percent. Defendant contends that the trial court specifically found that the proof did not establish that the victim died as a result of the injuries sustained from the gunshot wound, and therefore the judgment in Count 3 should reflect that Defendant was convicted of aggravated assault resulting in serious bodily injury, which carries a standard release eligibility of 30 percent.

We note that the various subsections of Tennessee Code Annotated section 39-13-102(a)(1)(A) are all modes of committing the same offense, aggravated assault. Aggravated assault that results in serious bodily injury to another is not a "lesser offense" of aggravated assault that results in death, as Defendant states in his brief. However, the various subsections do carry different release eligibility upon conviction.

At the conclusion of the bench trial, the trial court, as trier of fact, found that the State did not prove beyond a reasonable doubt that Defendant's conduct caused the Mr. Kehoe's death. The trial court announced its verdict as follows:

> Now, the next issue in this case is that of – and we've heard a lot of testimony about the cause of death. In a criminal case, again, the law provides direction as to the cause of death. Before a defendant can be convicted of any degree of homicide, the State must have proven beyond a reasonable doubt that the death of the deceased was [the proximate] cause by the criminal conduct of a defendant. That the proximate cause of death is that cause which in natural and continuous sequence, unbroken by any independent intervening cause, produces the death and without which the death would not have occurred. This case has been particularly troubling.

> The State has cited the case of *State v. Barnes*, at 703 S.W. 2nd 611. And that's a case in which a ninety-one-year-old woman was attacked and died some 14 days later as a result of pneumonia. In that case the doctor testified to a direct causal connection between the beating that the victim sustained and the pneumonia and sepsis, which ultimately ensued, and that was the direct cause of death.

> In this case we've heard testimony from both Dr. Zimmerman and Dr. Davis. And I think both doctors did an outstanding job. But in this case is Dr. Davis, who testified that the victim had a level of Flexeril in the system that would not have been, in and of itself, fatal to the victim. But he had an enlarged heart and there were other conditions which existed.

- 6 -

And I'll read from Dr. Davis' report, the statement[:] "The one thing a forensic expert can say with 100 percent certainty is; I don't know." Recognizing that this is not a civil case, where it's by a preponderance of the evidence, then the outcome would be different, and probably will be different if there is a civil action pending, as a result of his death. But we don't know, and we don't know for certain against that standard, beyond a reasonable doubt, the Court finds then that not every element of voluntary manslaughter has been established. And that is, the causal connection between the death of [the victim] and the actions of [Defendant].

Therefore, as to Count [o]ne, the Defendant is found guilty of attempted voluntary manslaughter.

As to Count [t]wo, the Defendant is found guilty of the employment of a firearm during the commission of a dangerous felony; attempted voluntary manslaughter.

And as to Count [t]hree, the Defendant is found guilty as to the offense of aggravated assault.

Although the trial court did not specify the element, serious bodily injury or death, of aggravated assault under section 39-13-102(a)(1)(A), the court clearly found that Defendant's actions did not cause the victim's death beyond a reasonable doubt.

At the conclusion of the sentencing hearing, the State argued that Defendant's conviction in Count 3 required 70 percent service before Defendant would be eligible for release. The trial court imposed a sentence of three years in Count 3, and the court ordered the sentence to be served at 70 percent "because of the involvement of the weapon factor[.]" Both the State and the trial court misstated the law. Under Tennessee Code Annotated section 40-35-501(k)(7), a person convicted of aggravated assault that results in death (not aggravated assault that involves the use of a deadly weapon) must serve 75 percent (not 70 percent) of the sentence imposed by the trial court.

The judgment of conviction in Count 3 states that Defendant was indicted for the offense of "AGGRAVATED ASSAULT" under Tennessee Code Annotated section "39-13-102(a)(1)(A)(ii)[,]" and it shows that the conviction offense is also "AGGRAVATED ASSAULT" under section "39-13-102(a)(1)(A)(ii)[,]" which is aggravated assault resulting in death. Under the section for release eligibility, the box beside "Agg Assault w/Death 75%" is checked.

Defendant argues that the judgment is incorrect because the trial court specifically found that the evidence did not establish beyond a reasonable doubt that there was a "causal connection between the death of [Mr.] Kehoe and the actions of [Defendant]." The State asserts that Defendant has waived consideration of the issue by failing to request clarification from the trial court at trial or at sentencing. Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). "The failure to make a contemporaneous objection constituted waiver of the issue on appeal." *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008).

Defendant responds to the State's waiver argument by asserting that sentencing errors cannot be waived for failure to raise them in a motion for new trial and that a motion for new trial is not required in a bench trial to preserve issues for appellate review. Tenn. R. App. P. 3(e). Defendant notes that he is "not requesting a new trial; he is asking only that his judgment form be corrected to reflect a release eligibility consistent with the conviction and sentence imposed by the trial court."

Both parties make arguments as to whether the factors required for plain error review are satisfied. "[W]hen necessary to do substantial justice," this Court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010); *see State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

The State acknowledges that Defendant's convictions in Counts 1 and 3 are inconsistent and asserts that inconsistent verdicts are permissible. *See Wiggins v. State*, 498 S.W.2d 92, 93 (Tenn. 1973); *see also Harris v. Rivera*, 454 U.S. 339, 345-46 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside" and rejecting the contention that "a different rule should be applied to cases in which a judge is the factfinder."). The State cites the testimony of Dr. Zimmerman that the victim's cause of death was initiated by the gunshot wound, which exacerbated the victim's existing health problems, and the State asserts, "notwithstanding the trial court's findings with regard[] to count one, the court may have found the evidence sufficient to support the conviction for count three." The State argues that because this Court cannot "divine what the trial court was thinking at the time of trial and sentencing[,]" the record does not clearly establish what occurred in the trial court. The State further asserts that because inconsistent verdicts are permissible in Tennessee, Defendant cannot establish that a clear and unequivocal rule of law was breached.

We need not address the factors necessary for plain error review. The record is clear that judgment of conviction in Count 3 does not reflect the verdict announced or the sentence imposed by the trial court. Therefore, we remand this case to the trial court for clarification of Defendant's conviction and sentence in Count 3 and entry of a corrected judgment form if necessary.

CONCLUSION

Based on the foregoing, we affirm the Defendant's convictions in Counts 1 and 2, and we remand for clarification of Defendant's conviction and sentence in Count 3.

_____
TIMOTHY L. EASTER, JUDGE