IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 10, 2020 Session

## STATE OF TENNESSEE v. DOUGLAS E. LINVILLE

**Appeal from the Circuit Court for Hardin County**
**No. 18-CR-145     Charles C. McGinley, Judge**

_____

### No. W2019-02180-CCA-R3-CD
_____

A jury convicted the Defendant, Douglas E. Linville, of possession of 0.5 grams or less of methamphetamine with intent to deliver in a drug-free zone, possession of Oxycodone with intent to deliver in a drug-free zone, possession of Xanax with intent to deliver in a drug free zone, simple possession of marijuana, and possession of drug paraphernalia. He received an effective twelve-year sentence. The Defendant appeals his conviction, arguing that the evidence was insufficient to support his convictions and that the trial court committed plain error by allowing a witness to testify about information the trial court previously ruled inadmissible. We affirm the trial court's judgments, and we remand to the trial court for correction of the judgment form in count three in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Kendall F. Stivers (on appeal), Assistant Public Defender – Appellate Division; and Matthew Edwards (at trial), Bolivar, Tennessee, for the appellant, Douglas E. Linville.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance W. Dennis and Jennifer Hedge, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

This case involved a search of Ms. Rhonda Hill's residence ("the Vine Street residence") on June 4, 2018, during which law enforcement officers with the Hardin County Sherriff's Department seized drugs and drug paraphernalia. The Defendant was charged with various drug-related offenses based on complaints about the Vine Street residence referencing him by name and based on his presence in Ms. Hill's residence during the search. The evidence presented at trial showed that 24th Judicial District Drug Task Force Agent Jason Caldwell received numerous complaints about the Vine Street residence, in which some complainants described people walking through their yards, knocking on their doors, asking for "Doug," and sometimes, with wallet in hand, requesting to purchase drugs. Agent Caldwell testified that some of the individuals described were affiliated with a "dope gang." He testified that the Defendant and Ms. Hill were in a romantic relationship at the time and that he suspected the Defendant lived with her. However, Agent Caldwell agreed he never observed the Defendant "coming or going" during his surveillance of the residence and that he did not know if the Defendant lived there at all. He testified that the Vine Street residence was within 1000 feet of a nearby park. Agent Caldwell and other law enforcement officers searched the Vine Street residence after obtaining a warrant.

During the search, Agent Caldwell encountered the Defendant and Ms. Hill in the master bedroom. There, he found digital scales covered in a white residue and "baggies" inside a dresser. Agent Caldwell testified that the presence of the residue was consistent with the sale of methamphetamine or cocaine, but no testing was completed to confirm the residue's composition. He testified that scales could be used by drug dealers to weigh drugs being purchased or sold or by drug users to verify they are not being "shorted" during a purchase. Agent Caldwell also found eight pills inside a "baggie" in the bathroom attached to the master bedroom.

Law enforcement encountered three other individuals, Jeffrey Reaves, Cindy Gammill, and Krystal Tall,[1] in a den or enclosed carport. Hidden in a couch in that room, law enforcement discovered a plastic container, a metal pill container, and "baggies" of methamphetamine and marijuana. Agent Caldwell testified that law enforcement charged Ms. Gammill separately for additional "baggies" of methamphetamine found in her vehicle and a small amount of marijuana found on her person. He also testified that the Vine Street residence had exterior video surveillance and explained that somebody could have known that law enforcement was present before the search. According to Agent Caldwell, none of the individuals present at the Vine Street residence claimed ownership

---

[1] We use the spelling from the Defendant's arrest warrants. The names are spelled in the trial transcripts as Jeff Reeves, Cindy Gamble, and Crystal Tahl.

of the contraband. He testified that all of the drugs seized at the Vine Street residence were sent to the Tennessee Bureau of Investigation ("TBI") for testing. TBI Special Agent Carter DePew analyzed the substances. He identified two pills as Oxycodone and six pills as Xanax, and he confirmed the other drugs were .21 grams of methamphetamine and 3.89 grams of marijuana.

Agent Caldwell testified that law enforcement seized five cell phones, but they could only retrieve information from two of them. He testified that one of the two phones belonged to the Defendant and the other to Ms. Hill. He explained that there was a significant amount of information that was found, including some text messages that he described as "pertinent" to the Defendant's case. Agent Caldwell agreed that some of the text messages were sent to the Defendant, but he added that "there's others that reference the validity of the drugs being sold." He also agreed that the Defendant's name was listed as the contact messages were being sent to and that the associated phone number matched the number the Defendant provided during the booking process. Before the prosecutor elicited more testimony from Agent Caldwell about the contents of the text messages, the Defendant objected on hearsay grounds. The prosecutor argued that the text messages were being offered to prove the Defendant's intent, but the trial court sustained the objection and ruled the text messages were inadmissible hearsay. Immediately after the trial court's ruling, the following exchange took place between the prosecutor and Agent Caldwell:

> Q. [D]o you have records in your messages of anything that was sent directly from Mr. Linville and that discuss[ed] drug-related activity? Not to him but from him in any of these – in any conversations?
> . . .
> A. The majority of those were from her to him.

The Defendant did not object again to Agent Caldwell's testimony.

At the conclusion of the trial, the jury convicted the Defendant of possession of 0.5 grams or less of methamphetamine with intent to deliver in a drug-free zone in count one, possession of Oxycodone with intent to deliver in a drug-free zone in count two, possession of Xanax with intent to deliver in a drug free zone in count three, simple possession of marijuana in count four, and possession of drug paraphernalia in count five. The Defendant appeals the outcome of his case on two grounds: (1) that the evidence was insufficient to support his convictions and (2) that the trial court committed plain error by allowing Agent Caldwell to testify about information the trial court had ruled inadmissible as hearsay.

# ANALYSIS

## I. Sufficiency of the Evidence

The Defendant challenges his convictions on the ground that the evidence was insufficient because it failed to show that he possessed any of the contraband or that he intended to deliver the pills or methamphetamine. Reviewing the sufficiency of the evidence supporting a criminal conviction requires this court to first "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the evidence is insufficient to support the finding of guilt beyond a reasonable doubt made by the trier of fact, its finding of guilt "shall be set aside." Tenn. R. App. P. 13(e). Once a defendant has been convicted, the presumption of innocence is replaced with a presumption of guilt on appeal. *Turner v. State*, 394 S.W.2d 635, 637 (Tenn. 1965). To overcome a presumption of guilt on appeal, the defendant bears the burden of showing the evidence presented at trial was "insufficient for a rational trier of fact to find guilt of the defendant beyond a reasonable doubt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) (citing *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979)).

The State "is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This court may not reweigh or reevaluate the evidence, because "[q]uestions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* at 236 (citing *Bland*, 958 S.W.2d at 659). After a guilty verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).

A defendant's guilt may be found beyond a reasonable doubt supported by direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

4

The State had to prove in count one that the Defendant knowingly possessed "methamphetamine with intent to ... deliver ... methamphetamine" in a drug-free zone. T.C.A. §§ 39-17-434(a)(4), -432(b)(1). In counts two and three, the State had to show that the Defendant knowingly possessed "a controlled substance with intent to ... deliver ... the controlled substance" in a drug-free zone. §§ 39-17-417(a)(4); -432(b)(1). Regarding count four, "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance...." T.C.A. § 39-17-418(a). Oxycodone is a Schedule II controlled substance, see T.C.A. § 39-17-408(b)(1)(M), Xanax is a Schedule IV controlled substance, see T.C.A. § 39-17-412(c)(2) (described as "Alprazolam"), and marijuana is a Schedule VI controlled substance, see T.C.A. § 39-17-415(a)(1). In count five, the State had to prove that the Defendant used or possessed with intent to use "drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or controlled substance analogue in violation of this part." T.C.A. § 39-17-425(a)(1).

The State had to prove possession for the jury to have convicted the Defendant in any of the above counts. See T.C.A. §§ 39-17-434(a)(4), -417(a)(4), -418(a), 425(a)(1). "Possession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). "[A]ctual possession refers to physical control over an item," while "constructive possession requires only that a defendant have 'the power and intention to exercise dominion and control over' the item allegedly possessed." State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting Shaw, 37 S.W.3d at 903). Whether a defendant constructively possessed contraband "depends on the totality of the circumstances in each case," and constructive possession "may be proven by circumstantial evidence." Robinson, 400 S.W.3d at 534 (citing T.C.A. § 39-17-419 (2006)). Neither an individual's "mere presence . . . in an area where drugs are found" nor the "mere association with a person in control of the drugs or the property where the drugs are located is" sufficient to establish possession. Id. (citing State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

The Defendant cites State v. Nicholaus Jones, No. W2018-01421-CCA-R3-CD, 2020 WL 974197 (Tenn. Crim. App. Feb. 27, 2020), no perm. app. filed, as support for his argument that he did not constructively possess any of the contraband. In that opinion, the defendant and his codefendant were present when police executed a warrant to search a motel room. Id. at *1. Law enforcement found drugs, a handgun, and a digital scale in the motel room and $118 on the defendant's person. Id. at *2. The defendant was convicted at trial for several counts related to his possession of the contraband. Id. at *1. In reversing the defendant's convictions, a panel of this court concluded that the State failed to prove the defendant possessed the contraband because there was no proof regarding who rented the room or possessed the room key, how long the defendant had been in the room and how long he intended to stay, or whether "any of

5

the bags or clothing in the room belonged to him." *Id.* at *10. The court also noted that the denominations of currency found on the defendant's person failed to suggest he had been selling the narcotics, and no contraband was found on the defendant's person, nor were there fingerprints shown to connect him with the contraband. *Id.*

When viewed in the light most favorable to the State, the evidence was sufficient to support the Defendant's convictions. Agent Caldwell received complaints about the Vine Street residence describing individuals walking through neighbors' yards, knocking on their doors, and asking for "Doug" and to purchase drugs. After searching the home, law enforcement found contraband in two areas of the residence. Agent Caldwell encountered the Defendant and Ms. Hill in the master bedroom, where he found scales covered in white residue, "baggies" in the dresser, and a "baggie" of two Oxycodone and six Xanax pills in an attached bathroom. Agent Caldwell testified that the white residue was consistent with the sale of methamphetamine or cocaine. In the den or enclosed carport, law enforcement found a plastic container with a metal pill container and "baggies" of methamphetamine and marijuana. Law enforcement seized a total of .21 grams of methamphetamine and 3.89 grams of marijuana during the search. Agent Caldwell testified that text messages "pertinent" to the Defendant's case were found on phones belonging to Ms. Hill and the Defendant and that some of them sent from Ms. Hill to the Defendant discussed drug-related activity. This case involves circumstances materially different than those at issue in *Nicholaus Jones*, because the evidence presented a reasonable inference the Defendant was involved in the sale of illegal substances at the Vine Street residence and that he controlled the contraband found inside the residence. Under these circumstances, the evidence supported the jury's finding that the Defendant constructively possessed the contraband found in the Vine Street residence. *See Robinson*, 400 S.W.3d at 534.

Specific to counts one through three, the State also had to prove that the Defendant possessed the controlled substances with intent to deliver them. *See* T.C.A § 39-17-417(a)(4). "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. T.C.A. § 39-11-302(a). "'Deliver' or delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance...." T.C.A. § 39-17-402(6). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. As discussed above, Agent Caldwell received complaints suggesting the Defendant was selling drugs out of the Vine Street residence. Law enforcement seized scales covered in a white residue and "baggies." Agent Caldwell testified that a drug dealer could use scales to weigh drugs before selling them, and he testified that the white residue was consistent with the sale of methamphetamine or cocaine. The fact that "baggies" were found near the scales supports the conclusion

that the Defendant possessed the controlled substances with the intent to deliver them. Law enforcement also seized "baggies" containing two Oxycodone pills, six Xanax pills, methamphetamine, and marijuana. We conclude that the evidence is sufficient to support the Defendant's convictions and that the Defendant is not entitled to relief on this claim.

## II. Plain Error

The Defendant contends that it was plain error for the trial court to have allowed Agent Caldwell to testify in contravention of its evidentiary ruling regarding the content of the text messages. The State argues that the Defendant is not entitled to relief under the plain error doctrine. We agree with the State.

The plain error doctrine provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was" waived. Tenn. R. App. P. 36(b). This court may only consider an issue as plain error when the following factors are met:

a) the record must clearly establish what occurred in the trial court;
b) a clear and unequivocal rule of law must have been breached;
c) a substantial right of the accused must have been adversely affected;
d) the accused did not waive the issue for tactical reasons; and
e) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); *see also State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). Additionally, the "'plain error must be of such a great magnitude that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 64 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). The appellant has the burden of showing that the trial court committed plain error, *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007) (citation omitted), and we need not consider all five factors if it is clear that at least one of them cannot be satisfied, *Smith*, 24 S.W.3d at 283.

Here, the record clearly establishes that Agent Caldwell's testimony violated the trial court's evidentiary ruling. However, the Defendant is not entitled to relief because he cannot show that consideration of the error is necessary to do substantial justice. This court has held that "rarely will plain error review extend to an evidentiary issue." *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540 at *2 (Tenn. Crim. App. Sept. 11, 2007) (citing *Dorman O'Neal Elmore, Jr. v. State*, No. E2005-02263-CCA-R3-PC (Tenn. Crim. App. Aug. 29, 2006)). Given the strength of the evidence presented at trial supporting the Defendant's guilt, Agent Caldwell's one-sentence comment about the text messages sent from Ms. Hill to the Defendant was unlikely to have had any material impact on the jury's decision or its assessment of the evidence. Therefore, the Defendant is not entitled to plain error relief.

### III. Clerical Errors

The Defendant notes in footnotes within his brief errors in the judgment with respect to count three, and he seeks correction of the judgment form. First, the jury convicted the Defendant in count three for his possession of Xanax, which is a Schedule IV controlled substance, see T.C.A. § 39-17-412(a), (b). However, the judgment form reflects that he was convicted of possessing a Schedule III controlled substance. The judgment form should be corrected to reflect that the Defendant was convicted of possessing a Schedule IV substance. Second, the judgment form reflects that the Defendant was convicted of a Class D felony in count three, when he was punished one class higher by the trial court under the drug-free zone statute according to the transcript, *See* T.C.A. § 39-17-432(b)(1) (2019) ("A violation of § 39-17-417" occurring "within one thousand feet (1,000') of the real property that comprises ... a park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation"). Accordingly, the judgment form should be corrected to reflect that the Defendant was convicted of a Class C felony.

### CONCLUSION

Based upon the foregoing reasons, we affirm the judgments of the trial court. However, we remand to the trial court for correction of the judgment form in count three in accordance with this opinion.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE